339 So.2d 755 (1976)
STATE of Louisiana
v.
Jerald C. CLIFT.
No. 57959.
Supreme Court of Louisiana.
November 8, 1976.
Rehearing Denied December 10, 1976.
*757 Mac Allynn J. Achee, Wray & Robinson, Baton Rouge, for defendant-appellant
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., John W. Sinquefield, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
In February of 1974, Jerald Clift was stopped by police near an apartment where a search warrant was being executed and heroin was being seized. Clift was searched and found to be in possession of heroin. He was arrested for possession of heroin, a violation of La.R.S. 40:966(C), tried, found guilty as charged, and sentenced to four years at hard labor without benefit of probation or suspension of sentence. He now appeals that conviction and sentence, relying on ten assignments of error.
ASSIGNMENTS OF ERROR NOS. 1 AND 6.
Defendant Clift argues that heroin and marijuana seized from him by police were unlawfully obtained, and that the trial judge erred in denying his motion to suppress and in later admitting this evidence at trial. Defendant's allegations raise two legal issues: did the police have reasonable cause to stop defendant, and, secondly, did the police have reasonable cause to search his wallet after they had arrested him for possession of marijuana?
As presented by the state, the facts show that at about eight o'clock on the evening of February 4, 1974, members of the East Baton Rouge Police Department, acting pursuant to a warrant, entered the apartment of Julius Sholars in the Lamplighter Apartments, an apartment complex in Baton Rouge. They arrested Sholars and two others in the apartment on the basis of heroin found on Sholars' person, and proceeded to execute the warrant by searching the apartment in order to find heroin.
*758 While the search was being conducted by several officers inside the apartment, two men, Jack Mergen, then a narcotics investigator with the District Attorney's Office, and Officer Clyde Porter of the Baton Rouge City Police, waited in the parking lot for the arrival of the police vehicle to take the three arrestees to jail and to detain anyone who sought to enter the apartment during the search. Just before nine o'clock a car pulled into the parking lot at the apartment complex, and a young man (the defendant) alighted and walked toward the building. Both Mergen and Porter recognized him as someone they had dealt with in previous narcotics investigations; Mergen remembered that he had personally arrested the man on a narcotics charge. The young man passed the point where the officers were standing and approached the door of Sholars' apartment. When he was only a few feet from the door, the men testified that they called out "We're narcotics officers; come here." Instead of obeying the officers' command, the young man van down the sidewalk away from the officers, and as he rounded the corner of the building, he threw an object into the bushes. One officer retrieved the object, which was discovered to be a bag containing marijuana, while the other officer captured defendant Jerald Clift and then arrested him for possession of marijuana. The two men took Clift inside the apartment and looked in his wallet for identification. After they found his driver's license, they continued to search his wallet and found, folded in a small piece of aluminum foil, a small quantity of heroin. Defendant Clift was then charged with possession of heroin.
At the hearing on the motion to suppress, defendant testified that as he approached the door he veered away from it, and was walking down the sidewalk, going away from the door, when the two men called out "Halt." Otherwise, defendant corroborated the officers' testimony as to his flight, his dropping of the marijuana, and the search of his wallet by police.
Defendant argues that there existed no legal cause for the officers to stop him, and alternatively, that if they did properly stop him, that they violated his constitutional guarantees when they searched his wallet.
If indeed defendant's stop was improper, then his arrest was also improper and neither of the two illegal substances could properly have been admitted at his trial. State v. Truss, 317 So.2d 177 (La. 1975); State v. Saia, 302 So.2d 869 (La. 1974). This Court has repeatedly held that a person may not justifiably be detained by police unless there is a reasonable basis on which authorities believe that the person has committed, is committing, or is about to commit an illegal act. State v. Kinnemann, 337 So.2d 441 (La.1976), handed down September 13, 1976; State v. Cook, 332 So.2d 760 (La.1976); State v. Truss, supra; State v. Saia, supra. Absent circumstances which connect the person with criminal conduct, an individual who is in a public place has a right to be left alone and to avoid encounters with the police. In order to determine whether the officers had sufficient knowledge to allow them to infringe on a citizen's right to be left alone, a reviewing court will look to the circumstances of each case. State v. Cook, supra; State v. Saia, supra.
We believe that under the circumstances of this case there were ample grounds for police to detain defendant Clift at the time of the stop. First, defendant Clift was approaching a door which led only to an apartment where a search warrant was being executed, where three people were being detained following arrest, and where heroin had actually been found. Second, both Mergen and Porter recognized defendant as a person whom they had dealt with on previous drug arrests; Mergen had himself arrested defendant on a narcotics charge. Further, the two men testified that one purpose of their waiting outside was to safeguard the apartment while it was being searched by fellow officers. They were ensuring that the warrant could be conducted, and the coincident arrests concluded, without interference.
If the only evidence produced had been consistent with defendant's testimony, that he had passed the apartment before he *759 was ordered to halt, there would have been no legal grounds to stop him, because the fact that a drug user walks past a drug outlet does not, without more, present reasonable cause to believe that he has committed, is committing, or is about to commit a crime. See Harlan, J., concurring, Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); State v. Saia, supra. Likewise, a stranger who is approaching a drug outlet or suspected drug outlet, cannot, without more, be forcibly detained by police. State v. Kinneman, supra.
The case before us, however, presents neither of these situations. The state's witnesses, those evidently accepted by the trial court, testified that they called out to defendant Clift as, approaching, he drew near the door of the apartment (i.e., within two to three feet thereof). We find no reason not to accept the state's testimony as did the trial judge. When we do so, we hold that when officers, who are protecting premises where criminal conduct has been discovered and where a search is being conducted under the authority of a warrant, see a man whom they recognize as a person involved with narcotics apparently about to enter the premises, the officers do have reason and authority to stop such person, if only to prevent his entrance or to inquire as to his intentions. Considering these circumstances, the officers properly pursued defendant who fled in response to their order. And when they saw him discard, in flight, a substance they believed to be marijuana, they properly arrested him.
We find, therefore, that the command, pursuit, and arrest were justified, there being no state or federal constitutional violations.
Defendant argues, alternatively, that even if the incipient encounter was justified and his arrest for possession of marijuana legal, the search of his wallet violated the fourth amendment because it was warrantless, and did not fall under any exception to the warrant requirement.
The search of defendant's wallet was made only after the lawful arrest for possession of marijuana. It is settled law that police officers, having legally arrested a person whom they have in custody, may search his person so as to discover and seize additional evidence of a crime. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1941).
Therefore, we find that defendant Clift's first argument lacks merit, because both illegal substances were seized without violation of his rights.
ASSIGNMENT OF ERROR NO. 4.
Defendant complains that the prosecutor's repeated references to defendant's commission of another crime, possession of marijuana, and the introduction of the marijuana into evidence, were prejudicial to defendant and constituted reversible error.
The marijuana at issue here is that which defendant Clift threw down as he fled. It was the basis for his initial arrest, for possession of marijuana, and it led to his search and the discovery of the heroin which formed the basis for the instant prosecution.
Defendant argues that the prosecutor's references to marijuana and the introduction of the drug were irrlevant to the prosecution, had no probative value, and prejudiced defendant. He urges that his motions for mistrial were improperly denied.
Article 770 of the Code of Criminal Procedure provides in pertinent part that:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:. . .
2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible."
*760 Under this article, if the evidence that defendant Clift possessed marijuana was not admissible at his trial, then upon defendant's motion a mistrial was mandatory.
We find, however, that the evidence as to the marijuana possession was admissible.
The initial test that is used to determine the admissibility of any evidence is whether that evidence is relevant to the prosecution. La.R.S. 15:441. If evidence is relevant and otherwise admissible, the fact that it is prejudicial does not bar its admission. State v. Hatch, 305 So.2d 497 (La. 1975). In its presentation of relevant evidence, the state may, if it wishes, present to the jury the alleged criminal act in its entirety. To hold otherwise would require that the state present only a part of the sequence of events which formed the criminal transaction.
Here, all of the events leading up to the arrest of the accused for possession of heroin occurred in an unbroken chain and within a few minutes of each other. Each occurrence formed a link which led directly to the defendant's arrest for possession of heroin. This is not a case in which the accused was committing two unrelated criminal acts simultaneously, but a situation where the two criminal acts were related and intertwined to such an extent that the state could not have accurately presented its case to the jury without reference to both of them. Therefore we find that in this situation evidence of defendant's possession of marijuana was admissible at his trial on the charge of heroin possession.
ASSIGNMENT OF ERROR NO. 9.
Defendant complains that the trial court erred when it refused to give defendant's special jury charge on the subject of intent. Defense counsel requested that the trial judge give the charge that
". . . an essential element of the offense of possession of heroin is that the accused must have knowingly and intentionally possessed the substance and the State must prove beyond a reasonable doubt that the accused had this guilty knowledge and intent that the substance that he possessed was heroin, otherwise the accused must be found not guilty of the offense of possession of heroin."
The trial judge, in his instructions to the jurors, read the statutory definition of the crime and then he stated:
"Now, as you can see, the statute from its legal definition requires criminal intent; that is, guilty knowledge, so I will read you the legal definition of what criminal intent is. Article 10 of our Criminal Code provides as follows: Criminal intent may be specific or general. (1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. And (2) General criminal intent is present whenever there is specific intent and also when the circumstances indicate that the offender in the ordinary course of human experience must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. Now, since general criminal intent is required in order to convict, the State is required to prove that the accused had general and criminal intent, in order to find him guilty of the crime chargedof possession of heroin."
The issue then, is whether the trial judge, who explained that general criminal intent is necessary before a finding of guilty, was also required to charge that "guilty knowledge and intent" were essential ingredients of the crime.
In this case the element of intent was a critical element. Defendant Clift testified that he had intended to purchase THC,[1] a powdered derivative of marijuana, from the drug dealer, and that he believed that he had purchased this substance. He testified that he placed the substance in his wallet and later that same evening, at a friend's house, he learned for the first time that the dealer was selling heroin, not THC. He *761 immediately asked a friend to drive him to the dealer's apartment to return the substance and it was as he approached that apartment that he was arrested. Defendant admitted that when he was searched he had heroin in his wallet. His defense was that he did not intend to have that substance, and that he was trying to return it when he was arrested.
Certainly the element of intent was critical in this case. However, Louisiana law requires only a showing of general intent, not specific intent, in order to establish that a person is guilty of possessing heroin. As we said in State v. Banks, 307 So.2d 594, 596 (La.1975):
"In spite of the words in R.S. 40:966 that `it shall be unlawful for any person knowingly or intentionally . . ." to do the prohibited acts, the statute requires no more than general criminal intent."
Because the trial judge did properly charge the jury that general intent was an essential element of the crime, that general charge included defendant's request that both "guilty knowledge and intent" be required. Charging the jury that it must find general criminal intent sufficiently tells them that defendant must have had guilty knowledge in this case.
Because the general charge contained the information in defendant's requested charge, the instructions contained no error, and the assignment lacks merit.
ASSIGNMENT OF ERROR NO. 13.
In this assignment, defendant urges that the trial court committed error when it denied defense counsel's motion for a new trial on the grounds that there was no evidence as to the essential element of guilty knowledge and intent; that the state unlawfully introduced evidence of another crime (possession of marijuana); and that the trial court failed to admonish the jury and give special jury instructions requested by the defense. Two of these grounds merely repeat previously asserted contentions we have discussed in other assignments. See assignments of error numbers four and nine.
For the first time, however, defendant alleges here that there was no evidence as to the essential element of guilty knowledge and intent. This Court can find error in the trial judge's denial of a motion for new trial on the basis that the state introduced no evidence of an essential element of the offense only when, upon our review of the record, we find no evidence of an element of the crime. State v. Mims, 330 So.2d 905 (La.1976). When we review this record, we do find evidence that the accused had the requisite guilty knowledge and intent. Although intent is a fact, it need not be proved as a fact. Instead, it can be inferred from the circumstances. La.R.S. 15:445. Here, the state introduced evidence that the illegal substance was taken from a section of defendant's wallet which was removed from his pocket, and that he fled upon being told to come toward the narcotics officers. Of course, defendant Clift himself testified that he believed that the substance he possessed was heroin from the time that he was told by his friend that the man from whom he purchased the substance was selling heroin, not THC. He testified that he did not attempt to destroy the heroin, but instead drove to the dealer's apartment so as to return it for a refund. See State v. Smith, 332 So.2d 773 (La. 1976). Thus, the record offers some evidence that defendant had the intent to possess the illegal substance.
We have carefully considered the other assignments (evidence of prior arrest elicited at motion to suppress, assignment number three; hearsay attack on a lab report, assignment number seven; a claim that the prosecutor improperly attempted to impeach a state witness, and improperly attempted to question an unresponsive state witness, assignments numbers five and eight; an allegation that the prosecutor's closing argument contained error because he included in it evidence not in the record and a statement of the law, assignments numbers ten and eleven). We find these assignments to be without merit. Assignments numbers two and twelve were specifically abandoned in brief.
*762 Accordingly, for the reasons stated above, we affirm defendant's conviction and sentence.
SANDERS, C.J., concurs.
SUMMERS, J., concurs. Mentioning issues is not assigning reasons for rulings on them.
DIXON, J., dissents. The initial stop was without probable cause.
NOTES
[1] THC is the common designation for the chemical substance tetrahydrocannabinols.