HALL, Chief Judge.
Defendant, Ronald L. Ritchie, was charged by bill of information with three counts of negligent homicide, in violation of LSA-R.S. 34:851.6. After trial by a six member jury, defendant was found guilty as charged and was sentenced to the maximum of one year in jail and a $1,000 fine on each of the three counts, with the sentences to run consecutively. Defendant appeals his convictions and sentences asserting six assignments of error. Finding no merit to the defendant’s assignments of error, his convictions and sentences are affirmed.
FACTS
On May 17, 1987, defendant was operating his Tide Craft bass boat in an area known as the Bossier Slough in Lake Bisti-neau. The Bossier Slough intersects with a body of water known as Miller’s Cut. Defendant, who was alone in his boat, had just passed a pleasure boat in which four people were riding. Defendant’s boat passed them on the left and on the wrong or left side of the channel at a high rate of speed. At the intersection of Bossier Slough and Miller’s Cut defendant’s boat collided with a Glasstron ski boat proceeding in the opposite direction on its right side of the channel, operated by Albert Joseph Dupree, III, and occupied by three passengers, James W. Taylor, Aaron Matthew Chandler and James Warren May-field. The three passengers were killed in *653 the accident, while the defendant and Mr. Dupree both survived.
Assignment of Error No. 1
Under this assignment of error the defendant asserts that the evidence regarding his possession and use of marijuana should have been ruled inadmissible as it was not alleged in either the bill of particulars or in the State’s -opening statement. The defendant also contends that the evidence of marijuana use and possession had no probative value, was highly prejudicial and was introduced solely to depict him as a bad person and to influence the jury against him.
Defendant was charged by bill of information with operating his Tide Craft boat in a “careless, reckless and negligent manner and/or at an immoderate rate of speed, resulting in a collision with a 1985 Glas-stron boat” causing the death of the three victims. Defendant filed a motion for a bill of particulars requesting information on how he was alleged to have been reckless. The state responded that the defendant was careless, reckless, or negligent by “excessive speed, failure ■ to maintain proper lookout, on wrong side of channel, failed to heed safe boating practices, failed to maintain proper control of his boat.” Although the defendant was not informed specifically of the state’s intention to use evidence of the defendant’s possession and use of marijuana through the bill of information or the answer to the motion for bill of particulars, the defendant was specifically informed by the state of its intention to introduce evidence of defendant’s marijuana usage in the state’s answer to defendant’s motion for discovery.
LSA-C.Cr.P. Art. 485 discusses the effect of inconsistent or limiting allegations in a bill of particulars. This article provides that the bill of indictment may be quashed if the indictment together with the bill of particulars does not charge the defendant with the crime he committed. Paragraph B under the official revision comments discusses the rationale behind the bill of particulars. This comment states in part, “The bill of particulars is intended to assure the defendant of a full understanding of the nature of the charge,”. Thus the purpose behind the rule is to prevent the defendant being surprised and unable to respond or defend against something he was unaware the state intended to use against him.
In State v. Jenkins, 338 So.2d 276 (La.1976) no reversible error was found where the state failed to answer a question regarding the venue of an alleged offense in a motion for bill of particulars as the defendant had already received the information at the preliminary examination. In State v. Johnson, 513 So.2d 832 (La.App. 2d Cir.1987), writ denied 519 So.2d 124 (La.1988) the defendant objected to the trial court’s allowing a piece of paper to be admitted into evidence where the state had refused to provide a copy of the paper as requested by defendant in his motion for bill of particulars. This court found no error as the defendant’s attorney had apparently already examined the piece of paper and, thus, there was no showing that the defendant was surprised or harmed by the entry into evidence of the piece of paper. In State v. Panepinto, 542 So.2d 1073 (La 1989), the Louisiana Supreme Court went outside of the bill of particulars to the state’s answers to defendant’s discovery request to find the state had given sufficient notice of all the elements of the crime. In the case at bar there is no indication that the defendant was surprised by the marijuana evidence, as he had already been informed through discovery of the state's intentions to use this evidence.
Defendant also asserts the evidence regarding his possession and use of marijuana should have been ruled inadmissible as its prejudicial effect outweighed any probative value. Louisiana Code of Evidence Art. 403. Relevant evidence is that tending to show or negate the commission of the offense and the intent. Louisiana Code of Evidence Arts. 401, 402. The trial court’s decision on relevancy is entitled to great weight and will not be overturned absent a finding of clear abuse of discretion. State v. Smith, 418 So.2d 515 (La.1982); State v. West, 419 So.2d 868 (La 1982). Evidence which is relevant and oth *654 erwise admissible should not be barred just because it is prejudicial. State v. Smith, supra; State v. Clift, 339 So.2d 755 (La.1976). Matters which are logically relevant to issues before the factfinder should not be excluded merely because they show the accused has committed other offenses. State v. Constantine, 364 So.2d 1011 (La.1978); State v. Herman, 358 So.2d 1282 (La.1978).
The defendant’s argument is that there was no evidence that he was under the influence of marijuana at the time of the accident and therefore the evidence of his chronic use of marijuana and that he was in possession of marijuana at the time of the accident had no probative value and was irrelevant. Agent Barnes testified that although defendant denied smoking any marijuana on the day of the accident defendant admitted he had smoked marijuana the day before the accident. Agent Barnes also testified he found some suspected contraband, later identified as marijuana, in defendant’s boat. The fact that marijuana was found in defendant’s boat is highly probative of whether he smoked marijuana on the day of the accident. Dr. Eugene Mano, a toxicologist at LSU Medical Center, testified that defendant’s urine test showed he was a chronic user of marijuana but it was impossible to determine whether the defendant had smoked marijuana in the past six hours or was simply a chronic marijuana user. Dr. Mano’s testimony indicates that the chronic use of marijuana will sufficiently raise the concentration of marijuana derivatives in the blood and urine so that recent usage of the drug will be masked. He also testified to both short term and long term effects of marijuana usage. Dr. Mano testified that the short term effects of marijuana usage would be impaired judgment and dexterity. When combined with alcohol usage there would be an additive effect so that the short term effects would be exaggerated. The long term effect of chronic use of marijuana would also affect the ability to operate a motor vehicle or boat. The evidence of marijuana in the boat, and the existence of marijuana derivatives in the defendant’s urine combined with the testimony showing that defendant had a .03 grams percent alcohol blood content, which allowing for the elimination rate of alcohol and the time between the accident and the blood alcohol test, would indicate that defendant’s blood alcohol level at the time of the accident would have been between .06 and .08 grams percent, bear on defendant’s ability to control and operate the vessel in a safe and prudent manner as expected of a reasonable person. Therefore, this evidence is clearly relevant and probative. Although prejudicial, the probative value of the evidence outweighs its prejudice in this case.
Therefore, this assignment of error is without merit.
Assignment of Error No. 2
By this assignment of error the defendant asserts the trial court erred in allowing into evidence the marijuana seized from defendant’s boat. Defendant asserts that the search resulting in the marijuana seizure was performed without a search warrant having been obtained and, therefore, the evidence seized should be inadmissible. The trial court denied defendant’s motion to suppress relying upon the defendant’s reduced expectation of privacy in the bass boat. The state asserts that the war-rantless search is supported by the automobile exception to the warrant requirement.
After his arrest, defendant was taken to LSU Medical Center for a medical examination and to have blood samples taken. While at LSU Medical Center, Agent Barnes overheard the defendant tell his wife that he had some “smoke” on the boat and she should get it if possible. This statement was overheard sometime between 10 and 11 o’clock p.m. Agent Barnes booked the defendant into jail at approximately 1 o’clock a.m., than went home and got some rest. At approximately 8 o’clock a.m. the following morning Agent Barnes, along with other officers, went to Camp Joy on Lake Bistineau, where defendant’s boat was pulled up next to a building and tagged with an evidence tag. There the officers searched the boat finding a plastic bag with green vegetable matter subsequently determined to be marijua *655 na. The marijuana was located inside of the boat tucked into a beverage holder which had become dislodged and was on the bottom of the boat near the driver’s seat. Apparently, the marijuana could not be seen until the plastic bag in which it was located was lifted up although the officer could see cigarette papers in the bag.
Agent Ronald Morris testified that he first saw the defendant at Camp Joy at Lake Bistineau on the 17th at approximately 5 o’clock p.m. He and Agent Barnes arrested the defendant at the scene and transported him to Troop G for a breathal-izer test. Agent Barnes testified during the suppression hearing that the bass boat involved had been tagged with a long white evidence tag which had written on it the boat numbers and printed on it “Do Not Remove.” Officer Barnes testified, “That the boat was parked beside the building, right beside our building there at Camp Joy.”
In State v. Denton, 387 So.2d 578 (La.1980), the Louisiana Supreme Court discussed warrantless searches, the automobile exception to the warrant requirement and the application of that exception to searches of boats. The court stated:
“It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable under the fourth amendment, subject only to a few specifically established and well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Spencer, 374 So.2d 1195 (La.1979); State v. Gordon, 332 So.2d 262 (La.1976). One of these exceptions is the so-called 'automobile exception.’ This exception is based upon the existence of probable cause to search the vehicle and exigent circumstances which render it impractical to secure a warrant. Coolidge v. New Hampshire, supra; Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); State v. Spencer, Supra; State v. Gordon, supra. This exception applies equally to a vessel. United States v. Weinrich, 586 F.2d 481 (5th Cir.1978) cert. denied, Blair v. U.S., 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 243 and 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979).”
Since the decision in State v. Denton, the United States Supreme Court has dealt with the “automobile exception” in numerous cases, further explaining the exception and its rationale. In California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), the court held that in addition to the ready mobility of a vehicle stressed as the rationale for the exception in earlier cases, another basis for the exception is the reduced expectation of privacy with respect to a vehicle. The court noted that the exception has been applied where an automobile was not immediately mobile. In some cases, configuration of the vehicle contributed to the lower expectation of privacy because parts of an automobile are relatively open to plain view. The exception has also been applied where enclosed areas are involved, the reduced expectation of privacy being derived from the pervasive regulation of vehicles capable of traveling on public highways.
Other cases have recognized that exigency is inherent in the mobility of vehicles and searches of vehicles have been upheld under the automobile exception even where the vehicle has been seized or impounded earlier or is otherwise effectively immobilized. In United States v. Johns, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985), the court held:
“There is no requirement that the war-rantless search of a vehicle occur contemporaneously with its lawful seizure. Texas v. White, 423 U.S. 67, 68, 96 S.Ct. 304, 305, 46 L.Ed.2d 209 (1975) (per curiam); Chambers v. Maroney, 399 U.S. 42, 52, 90 S.Ct.1975, 1981, 26 L.Ed.2d 419 (1970). ‘The justification to conduct such a warrantless search does not vanish once the car has been immobilized.’ Michigan v. Thomas, 458 U.S. 259, 261, 102 S.Ct. 3079, 3081, 73 L.Ed.2d 750 (1982) (per curiam). A vehicle lawfully in police custody may be searched on the basis of *656 probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search.” Id., at 261-262, 102 S.Ct., at 3081; see also Florida v. Meyers, 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984) (per curiam).
A delay in the execution of the warrant-less search is not necessarily unreasonable, particularly where the delay does not adversely affect legitimate interests protected by the Fourth Amendment. U.S. v. Johns, supra, 105 S.Ct. at p. 887.
In Florida v. Meyers, 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984), the court held:
“The District Court of Appeal either misunderstood or ignored our prior rulings with respect to the constitutionality of the warrantless search of an impounded automobile. In Michigan v. Thomas, 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982), we upheld a warrantless search of an automobile even though the automobile was in police custody and even though a prior inventory search had already been made. That ruling controls the disposition of this case. In Thomas, we expressly rejected the argument accepted by the District Court of Appeal in the present case, noting that the search upheld in Chambers was conducted ‘after [the automobile was] impounded and [was] in police custody’ and emphasizing that ‘the justification to conduct such a warrantless search does not vanish once the ear has been immobilized.’ 458 U.S., at 261, 102 S.Ct., at 3081. The District Court of Appeal’s ruling that the subsequent search in this case was invalid because the car had been impounded is clearly inconsistent with Thomas and Chambers.”
The earlier case of Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), recognized that a later search of an automobile seized and held as evidence was not unreasonable where the subsequent search was closely related to the reason the defendant was arrested and the car impounded. In that case the court held that the test was not whether the police could have obtained a search warrant but was whether the search was reasonable. It was not unreasonable to examine or search a car validly held by officers for use as evidence.
In the instant case it is not disputed that the boat was validly seized by officers as the instrumentality of the crime for use as evidence, tagged as such, and left near a wildlife building on the lake while officers pursued other aspects of the investigation. The boat was seized in the late afternoon and was further searched and examined early the next morning for additional evidence related to the offense charged. The search took place only a few hours after defendant was booked into jail and the delay did not result in any additional imposition on any privacy expectation of the defendant. The boat involved was a bass fishing boat, mostly open and unenclosed. Motorboats are highly regulated under Louisiana law with broad authority given to enforcement officers to board and inspect boats used on public waters. See LSA-R.S. 34:851.1 et seq., 34:851.29. The expectation of privacy of the owner and operator of such a boat is minimal. The package of marijuana was found on the floor of the open area of the boat stuffed into a wire beverage glass or can container.
Under these circumstances, the subsequent search and examination of the boat was reasonable and justified under the so-called automobile exception to the warrant requirement. Defendant’s motion to suppress was correctly overruled and this assignment of error is without merit.
Assignment of Error No. 3
By this assignment of error the defendant asserts that the trial court erred in charging the jury as to ordinary negligence rather than criminal negligence. The statute under which the defendant was prosecuted, LSA R.S. 34:851.6, provides:
§ 851.6. Negligent homicide
Any person who by the operation of any watercraft at an immoderate rate of speed, or in a careless, reckless, or negligent manner shall cause the death of another shall be guilty of the crime of negligent homicide, punishable by impris *657 onment of not more than one year, or by a fine of not more than $1,000, or both.
Defendant’s argument is two-fold. First, it is argued that because “negligence” is not defined in the statute, reference to the federal statute, 46 U.S.C.A. 2302, is appropriate and necessary. The federal statute provides criminal penalties for the operation of a vessel in a “grossly negligent” manner. However, Lake Bistineau has been held not to be a navigable body of water, Smith v. Hustler, Inc., 514 F.Supp. 1265 (W.D.La.1981), and only those inland waters that can be termed navigable are subject to the jurisdiction of the federal government under this statute. See The Propeller Genesee Chief v. Fitzhugh, 53 U.S. (12 How) 443, 13 L.Ed 1058 (1851); Southern S.S. Company v. National Labor Relations Board, 316 U.S. 31, 62 S.Ct. 886, 86 L.Ed. 1246 (1942). Therefore, the federal definition does not apply.
The defendant’s second argument is based on provisions in the criminal code. LSA R.S. 14:7 defines a crime as “that conduct which is defined in this Code, or in other acts of the legislature, or in the constitution of this state.” LSA-R.S. 14:8' provides that criminal conduct consists of “Criminal negligence that produces criminal consequences.” LSA-R.S. 14:12 defines criminal negligence as follows:
“Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender’s conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.”
Defendant contends that in order for there to be criminal conduct that produces criminal consequences there must be criminal negligence, and therefore the trial court erred in defining negligence under the charged statute as ordinary negligence rather than criminal negligence. However, defendant’s argument ignores the second phrase in 14:7 specifically allowing for definitions of criminal conduct by acts of the legislature other than those included in the criminal code, as in the motor vehicle regulation laws and the shipping and navigation laws.
In defining the crime charged here in broader terms and in using the term “negligence” rather than “criminal negligence”, the legislature obviously intended a different standard for negligent homicide in the statutes dealing with boating than for negligent homicide as included in the criminal code, LSA-R.S. 14:32, which defines negligent homicide as the killing of a human being by criminal negligence. The maximum penalty under the boating statute is substantially less than under the criminal code, one year without hard labor and/or a fine of $1,000 as compared to five years with or with hard labor and/or a fine of $5,000. The lesser penalty is strongly indicative of a legislative intent to proscribe less egregious conduct under the boating statute.
In 21 Am.Jur 2d, Criminal Law, section 132, the distinctions between ordinary and gross or criminal negligence are discussed. There it is noted that “want of due care is sufficient if that is all the statute requires, since the legislature has power to define a crime based on ordinary negligence.”, citing People v. Pociask, 14 Cal.2d 679, 96 P.2d 788 (1939) and State v. Labonte, 120 Vt. 465, 144 A.2d 792 (1958). Pociask was a very similar case in which defendant was charged under a specific statute defining motor vehicle negligent homicide in the traffic regulations. In that case, the defendant could also have been charged under the general negligent homicide statute. The court held that by enacting a separate provision with a different standard of proof as evidenced by the use of the word negligent alone, the legislature obviously intended to recognize an area of dangerous activity in which ordinary negligence, or falling below a standard of due care, results in criminal behavior. See also U.S. v. McHugh, 103 F.Supp. 740, (D.C.Pa.1952) where the court stated that words similar to those used in our statute required proof of ordinary negligence beyond a reasonable doubt. Note that although the conduct declared criminal by one operating a motor boat is measured by an ordinary or civil *658 negligence standard, that is, failure to act with due care under the circumstances, proof of the defendant’s negligence must be made beyond a reasonable doubt, thus imposing a higher standard of proof than in civil cases.
The trial court’s instruction on ordinary negligence was not error and this assignment is without merit.
Assignment of Error No. 4
By this assignment of error the defendant asserts that the trial court erred in failing to grant a mistrial when jurors were allowed to view a photograph which had pot been introduced into evidence. During its deliberation the jury requested the photographs introduced into evidence. Apparently the state had marked two different photographs as S-21. Only one of these photographs, the one showing a tree which seemed to have been hit by the Glasstron boat, was introduced into evidence. However, when the jury requested the photographs, the alternate S-21, showing the Glasstron boat, which had never been introduced into evidence was given to the jury along with the remaining photographs. The defendant claims that the jury saw a photograph which had not been introduced in evidence and a mistrial should have been declared.
A mistrial is a drastic remedy and is warranted only when trial error results in substantial prejudice to the defendant which would deprive him of a fair trial. State v. Smith, supra; State v. Cushenberry, 407 So.2d 700 (La.1981). The determination of whether substantial prejudice has resulted lies in the trial court’s sound discretion. State v. McLeland, 456 So.2d 633 (La.App. 2d Cir.1984), writ denied 461 So.2d 312 (La.1984).
In State v. Vince, 305 So.2d 916 (La.1974) the court dealt with a similar situation in which defendant argued that a mistrial should have been granted because the jury had been allowed to see certain evidence when the clerk was removing objects from a cardboard box. In affirming defendant’s conviction, the Louisiana Supreme Court stated:
The trial judge did not err in denying the motion for a mistrial. There was no showing that the jurors actually saw the other evidence. Moreover, even assuming that the jurors saw the other evidence, there was no showing that prejudice resulted. In the absence of prejudice, this court will not disturb the conviction. C.Cr.P. Art. 921. See also State v. Giles 253 La. 533, 218 So.2d 585 (1969). id. at page 920.
Federal decisions which have considered the question have noted that defense counsel has a responsibility to check exhibits which are being sent to the jury and a failure to do so may constitute a waiver of any objections. Government of Virgin Islands v. Joseph, 685 F.2d 857 (3rd Cir.1982); United States v. Burket, 480 F.2d 568 (2nd Cir.1973); United States v. Strassman, 241 F.2d 784 (2nd Cir.1957). The cases which have found reversible error when the jury is allowed to see items not properly entered into evidence have all reviewed the situation to determine if the evidence was prejudicial to or affected substantial rights of the defendant. See Government of Virgin Islands v. Joseph, supra; United States v. Hans, 738 F.2d 88 (3rd Cir.1984).
The issue thus becomes whether the defendant suffered prejudice from the jury’s viewing of a picture of the Glasstron boat which should have not been entered into evidence. There was sufficient other testimony and evidence as to the condition of the Glasstron boat so that the jury’s inadvertent viewing of the photograph was not prejudicial. Agent Barnes of the Louisiana Department of Wildlife and Fisheries identified S-2 as showing the damage on the Glasstron boat. Further Agent Barnes testified that S-16, S-17, S-18, S-19 and S-20 all were photographs depicting the Glas-stron boat after the accident. Also Ray Heard, an expert in the field of accident reconstruction, testified to the condition of the Glasstron boat following the accident. His testimony was based in part on the photographs of the Glasstron boat as well as additional photographs which were entered into evidence.
*659 As the jury had already heard testimony concerning the boat and seen numerous other photographs of the Glasstron boat the jury’s inadvertent viewing of one additional photograph of the boat not entered into evidence did not prejudice the defendant so as to require a mistrial. This assignment of error is without merit.
Assignment of Error No. 5
By this assignment of error the defendant argues there was insufficient evidence to show that his negligence was the cause of the deaths of James W. Taylor, Aaron Matthew Chandler and James Warren Mayfield. He argues that it was the negligence of the driver of the boat in which the victims were riding, not the defendant’s negligence which caused the accident. The defendant also argues there was no evidence that the deaths of the three individuals were caused by the actual impact of the boats. Therefore, if the three persons died as a result of the boat’s impact with the trees after the collision, rather than at the time of the collision itself then the boat collision was not the proximate cause of their deaths. If the boat collision is not the proximate cause of the deaths of the individuals then defendant is not guilty of any homicide. Defendant relies upon State v. Perkins, 514 So.2d 503 (La.App. 2d Cir.1987) which held that the state “must prove the homicide resulted from, or was caused by, produced by, the defendant’s conduct. The legislature requires the state to prove facts that allow the inference of the causal link between the death and the conduct and does not allow the state to rely on the naked inference or bare assumption.”
In reviewing for sufficiency of the evidence to determine whether the state has met its burden of proof, the standard of review is whether viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La.1984). To meet its burden of proof the state, in a homicide case, must prove the death of the person alleged to have been killed and the criminal agency of someone as the cause [in fact and in law] of the death beyond a reasonable doubt. State v. Willie, 410 So.2d 1019 (La.1982); State v. Allen, 440 So.2d 1330 (La.1983); State v. Perkins, supra.
To causally connect the victim’s deaths with the defendant’s actions, the state called on the testimony of Dr. George McCormick, II, an expert in forensic pathology. Although he could not determine whether the deaths were the result of the collision between the boats or the subsequent collision with the trees, he was emphatic that the collision between the two boats was the proximate cause of the deaths of the three individuals. In other words the deaths may have been caused by the collision with the trees, but the collision with the trees was caused by the collision between the boats.
The deaths of the three victims, whether physically resulting from the collision between the boats or the collision of the boat in which they were riding with the trees, was a direct, natural, foreseeable consequence of the defendant’s negligence.
Considering there was testimony that the defendant was driving on the wrong side of the channel about ten feet from the tree line prior to the accident, that immediately prior to the collision the defendant had passed another boat at a high rate of speed and had turned around peering at that boat after passing it instead of keeping a proper lookout, that defendant had a .03 grams percent blood alcohol content several hours after the accident (translating to .06 to .08 grams at the time of the accident) together with the additive effect of defendant’s alcohol and marijuana consumption, a rational jury could have readily found the defendant to have been operating his boat in a careless, reckless, or negligent manner and that this carelessness, recklessness or negligence was the cause of the collision between the two boats and the proximate cause of the deaths of James W. Taylor, Aaron Matthew Chandler, and James Warren Mayfield. This assignment of error is without merit.
*660 Assignment of Error No. 6
By this assignment of error the defendant challenges the consecutive sentences imposed by the trial court of one year in parish jail and a $1,000 fine on each of the three counts of negligent homicide. Defendant asserts that the trial court failed to consider the mitigating circumstances that the offense involves no criminal intent and the contributing factors of the other boat to the deaths of the victims.
In reviewing whether a sentence imposed on a particular defendant is excessive, the appellate court first looks to the record to show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. Art. 894.1. Although the trial court is not required to list every aggravating or mitigating circumstance the record must reflect that he adequately considered the guidelines of that article. State v. Smith, 433 So.2d 688 (La.1983). The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied 521 So.2d 1143 (La.1988). In sentencing this defendant the trial court specifically mentioned that the defendant had three previous D.W.I. convictions occurring before the accident in question. Additionally the defendant has a conviction of possession of marijuana with intent to distribute, a felony. The defendant has previously been afforded leniency at least three times with probated sentences for D.W.I. and a probated sentence for the felony conviction. The trial court considered the evidence of the defendant’s drug possession at the time of the accident and found that there would be a high risk that were the defendant not given a maximum sentence the likelihood of the same or a similar occurrence in the future would be great. The record reflects that the trial court considered the factors of 894.1 in imposing sentence.
Our review must also determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. The sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). The trial court has wide discretion in imposition of a sentence within the statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983); State v. Hudgins, supra.
The defendant contends that the imposition of consecutive maximum sentences in this case was an abuse of discretion. As a general rule concurrent rather than consecutive sentences are given to a defendant convicted of multiple offenses arising out of a single course of criminal conduct. State v. Williams, 445 So.2d 1171 (La.1984); State v. Mills, 505 So.2d 933 (La.App. 2d Cir.1987), writ denied 508 So.2d 65 (La.1987), but it is in the trial court’s discretion to order sentences to run consecutively rather than concurrently, State v. Derry, 516 So.2d 1284 (La.App. 2d Cir.1987), writ denied 521 So.2d 1168 (La.1988). All factors are to be considered, State v. Ortego, 382 So.2d 921 (La.1980) cert. denied 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Beverly, 448 So.2d 792 (La.App. 2d Cir.1984), writ denied 450 So.2d 951 (La.1984), because a judgment directing that such sentences be served consecutively requires particular justification, State v. Lighten, 516 So.2d 1266 (La.App. 2d Cir.1987).
The court noted the defendant’s previous convictions of D.W.I. and possession of marijuana with intent to distribute. Additionally the court noted that-the defendant’s use of drugs and alcohol apparently contributed to the accident. Based on this history of drug and alcohol abuse, the trial *661 court felt that the defendant was in need of incarceration where he would be unable to use either alcohol or marijuana. Although the trial court considered that the defendant did not intentionally hurt the victims and that the driver of the other boat may have contributed to the accident, the trial court noted that any lesser sentence would deprecate the seriousness of this offense. This sentence, although harsh, is not excessive and does not shock our sense of justice. In light of the defendant’s history of drug and alcohol abuse and the tragic deaths of three persons, the maximum consecutive sentences are justifiable. This assignment of error is without merit.
For the foregoing reasons the defendant’s convictions and sentences are affirmed.
AFFIRMED.
ON APPLICATION FOR REHEARING
Before HALL, SEXTON, LINDSAY, NORRIS and HIGHTOWER, JJ.
Rehearing denied.