NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-50

STATE OF LOUISIANA

VERSUS

LOUIS VERNON JACKSON

************

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C10630
HONORABLE DEE A. HAWTHORNE, DISTRICT JUDGE

************

DAVID E. CHATELAIN*
JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and David E. Chatelain, Judges.

AFFIRMED.

Van Hardin Kyzar
District Attorney
R. Stuart Wright
Assistant District Attorney
Post Office Box 838
Natchitoches, Louisiana 71458-0838
(318) 357-2214
Counsel for:
        State of Louisiana

---

*Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Peggy J. Sullivan**
**Louisiana Appellate Project**
**Post Office Box 2806**
**Monroe, Louisiana 71207-2806**
**(318) 387-6124**
**Counsel for Defendant/Appellant:**
     **Louis Vernon Jackson**

**CHATELAIN, Judge.**

The defendant appeals his conviction for attempted possession of cocaine and the two and one-half year sentence the trial court imposed. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

After a traffic stop made on November 18, 2005, by officers of the Natchitoches Police Department, the defendant, Louis Vernon Jackson, was charged with possession of cocaine with the intent to distribute, a violation of La.R.S. 40:967(A)(1).

The matter was tried to a jury in May 2007. The evidence adduced at trial shows that Detective Patrick Custis, Lieutenant Brad Walker, Detective Corporal Stan Williams, and Sergeant Jeff Franks of the Natchitoches Police Department were riding in a police vehicle when they spotted a Ford Explorer for which a "Be On Look-Out" notice had been issued. The department had received a complaint of a stolen vehicle matching the description and license plate number of the Explorer. The officers initiated a traffic stop. Lieutenant Walker was driving, Sergeant Franks was sitting in the passenger seat, Detective Custis was sitting behind Sergeant Franks, and Detective Williams was sitting behind Lieutenant Walker. The three occupants of the Explorer, the defendant, a sixteen-year-old, and Jody Brown, were arrested. The juvenile was driving the Explorer, Brown was in the back seat, and the defendant was in the front passenger seat.

Sergeant Franks testified that prior to the stop, he saw the front passenger, whom he and Detective Custis identified at trial as the defendant, reach over the back of his seat into the rear of the Explorer, but he could not tell what the defendant was

1

doing. Sergeant Franks stated that he was within twenty feet of the Explorer at that time.

Lieutenant Walker testified that he saw the front passenger "place something at the foot" of the rear passenger. According to Lieutenant Walker, he activated the emergency lights on his vehicle, and as he did so, he saw the front passenger "turn around and appear to punch the man in the backseat in the face." Lieutenant Walker testified that he was less than ten feet from the vehicle at that time. Lieutenant Walker further testified that he removed the juvenile from the vehicle and that as he did so, a .38 caliber handgun fell from the juvenile's lap onto the floorboard.

Detective Williams testified that he found a medicine bottle in the rear of the vehicle, but he did not recall if it was on the seat or on the floorboard. He also testified that the bottle was within the reach of Brown, the back passenger. Sergeant Franks testified that he removed Brown from the vehicle and saw that Brown was bleeding from the area of his mouth.

Lieutenant Walker contacted Detective Corporal Jesse Tiatano of the Natchitoches Multi-jurisdictional Drug Task Force (Drug Task Force) for assistance. Detective Tiatano and Sergeant Billy Meziere, who is also assigned to the Drug Task Force, went to the scene. Detective Tiatano testified that Sergeant Meziere searched the defendant and recovered $294 from his front pockets. He further testified that the defendant told the officers that the pill bottle was Brown's, not his. Detective Tiatano did not believe any fingerprint or DNA testing was performed on the pill bottle.

Sergeant Meziere testified that he collected an orange pill bottle containing approximately sixty-seven rocks of what was suspected to be crack cocaine which

weighed 18.43 grams. He stated that the bottle had been removed from the Explorer by the officers who made the traffic stop.

Assistant Chief Greg Dunn is also assigned to the Drug Task Force. He testified as an expert in the street usage, distribution, and values of crack cocaine in Natchitoches Parish. He related that in his experience, a first-time user or someone in the beginning stages of drug usage may have four or five rocks in his possession but that someone with a serious crack addiction typically uses the drugs very soon after purchase and, therefore, rarely has more than one rock in his possession. In contrast, Assistant Chief Dunn testified that someone who has a large quantity of rocks is normally a dealer. Lastly, he opined that fifty rocks of cocaine could be worth one thousand to two thousand dollars and that in his experience, such an amount would be for distribution, not for personal consumption.

Brown testified that he was a crack cocaine addict and that he had known the defendant for eight or nine years. He admitted that he had been convicted of simple robbery, aggravated battery, simple escape, public intimidation, simple assault, and resisting an officer. He testified that he was in the vehicle with the defendant and "the other guy," whom he did not know, trying to sell the defendant some speakers. Brown explained that he had smoked cocaine earlier in the day before he saw the defendant and the juvenile coming down the street in the Explorer and he stopped them. According to Brown, just before the police stopped the Explorer, the defendant punched him in the mouth, put a bottle with "a lot" of crack cocaine in a pouch behind the seat he was sitting in, and told him to say the drugs were his. He admitted that he had seen the cocaine before the stop; however, he also admitted that he was unemployed and without income and that he could never afford to buy more than a

couple of rocks of cocaine at a time. He denied being in the business of selling cocaine.

Charges filed against Brown in connection with this incident were dismissed in exchange for his pleading guilty to simple robbery; the plea agreement did not require him to testify against the defendant. Brown served a one-year sentence, which ended three weeks before the defendant's trial, and he had been in the city jail in the detoxification unit for the two days prior to the trial.

The defendant testified that he had been convicted of possession of cocaine with the intent to distribute and entry into an inhabited dwelling in January 2007 for which he received an eight-year sentence and that he was incarcerated in the Natchitoches Parish Detention Center at the time of trial. According to the defendant, he and Brown got into the Explorer with the juvenile around the same time on November 18, 2005, and Brown's "lip was already bust [sic]" at that time. The defendant then testified that his brother had been present when Carlos Grigsby punched Brown in the mouth because Brown took Grigsby's drugs. He denied having any drugs that day and stated that he was unaware Brown had the bottle of crack cocaine. He claimed that he was being tried "on all [his] charges" because the police thought he knew "something . . . about a homicide on Fish Hatchery Road" that he does not know anything about.

The jury found the defendant guilty of attempted possession of cocaine. The trial court sentenced him to the maximum sentence for attempted possession of cocaine, two and one-half years, which sentence was ordered to run consecutively to the sentence he was serving at the time of his conviction.

4

The defendant filed applications for post-conviction relief on April 21, 2009, and on June 8, 2009, which were denied. On June 26, 2009, the defendant filed a motion for out-of-time appeal, which the trial court considered as an application for post-conviction relief. After reviewing the record of this proceeding, the trial court determined that the defendant had not been advised of his right to appeal when he was sentenced. Accordingly, it concluded that he was entitled to the requested out-of-time appeal and granted it.

The defendant appeals his conviction, asserting that the evidence was insufficient to convict him of attempted possession of cocaine, and his sentence of two and one-half years, arguing that it is excessive. For the reasons set forth below, we affirm his conviction and sentence.

## SUFFICIENCY OF THE EVIDENCE

The defendant contends that the State failed to prove beyond a reasonable doubt that he committed the offense of attempted possession of cocaine, claiming that the drugs belonged to Brown, not to him.

The defendant was charged with possession of cocaine, which is a general intent offense. *See State v. Odle*, 02-226 (La.App. 3 Cir. 11/13/02), 834 So.2d 483, *writ denied*, 03-625 (La. 6/20/03), 847 So.2d 1219 (citing *State v. Clift*, 339 So.2d 755 (La.1976)). However, Louisiana law defines one who attempts a crime as "[a]ny person who, having a *specific intent* to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object." La.R.S. 14:27(A) (emphasis added). Therefore, an attempted offense requires a showing of specific intent. *Id.* Notwithstanding, this court has determined that a conviction for a responsive verdict which requires specific intent must be affirmed where the

5

evidence is sufficient to sustain a conviction for the charged offense and the defendant did not object to an instruction being given on the responsive verdict at trial. *Odle*, 834 So.2d 483 (citing *State v. Cortez*, 96-859 (La.App. 3 Cir. 12/18/96), 687 So.2d 515, and *State ex rel. Elaire v. Blackburn*, 424 So.2d 246 (La.1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2432 (1983)).

The standard of review for a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007), *citing Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984). "To support a conviction for possession of cocaine, the State must prove that the defendant was knowingly in possession of the illegal drug; and, to prove an attempt, the State must show that the defendant committed an act tending directly toward the accomplishment of his intent to possess cocaine." *State v. Lewis*, 98-2575, p. 3 (La.App. 4 Cir. 3/1/00), 755 So.2d 1025, 1027.

The *Jackson* standard of review is now legislatively embodied in La.Code Crim.P. art. 821. Pursuant to this article, the appellate court cannot "substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521. Nor can the appellate court "assess credibility [of witnesses] or reweigh the evidence," *State v. Smith*, 94-3116, p. 2 (La. 10/16/95), 661 So.2d 442, 443, because a witness's credibility is "a matter of the weight of the evidence, [which is] not subject to appellate review." *State v. Carlos*, 618 So.2d 933, 945 (La.App. 1 Cir.), *writ denied*, 623 So.2d 1305 (La.1993).

6

A defendant may be in constructive possession of cocaine if it is subject to his "dominion and control," although he is not in actual possession of it, as here. *State v. Johnson*, 09-231, p. 3 (La.App. 3 Cir. 11/4/09), 21 So.3d 1159, 1162 (quoting *State v. Toups*, 01-1875, p. 3 (La. 10/15/02), 833 So.2d 910, 913). Furthermore, a defendant must be shown to have guilty knowledge to be convicted of unlawful possession of cocaine. *Id.*

Brown testified that before the police stopped the Explorer, the defendant punched him in the mouth. He also testified that the defendant placed the pill bottle containing crack cocaine "behind the seat [in which he was sitting] in [a] pouch." The defendant claimed, however, that he knew nothing of the drugs and that Brown's lip was "already bust [sic]" when he entered the vehicle.

Brown's testimony was corroborated by Sergeant Franks's and Lieutenant Walker's testimony that they saw the defendant reach into the back seat, and Lieutenant Walker's testimony that he saw the defendant punch Brown.

The jury chose to believe Brown and the police officers rather than the defendant. Our review of the record shows that the jury's decision to reject the defendant's version of events is not unreasonable. Accordingly, viewing the evidence in the light most favorable to the prosecution, we find the jury could have found the State proved beyond a reasonable doubt each element of the crime charged. Therefore, we affirm the defendant's conviction. *See Odle*, 834 So.2d 483.

## EXCESSIVE SENTENCE

The defendant also complains that his sentence is unconstitutionally harsh and excessive under the facts and circumstances of this case.

Louisiana Code of Criminal Procedure Article 881.1(E) requires a defendant to make or file a motion to reconsider his sentence within thirty days of imposition of the sentence. A defendant who fails to make or file a motion to reconsider his sentence is precluded from raising any objection to the sentence on appeal. *Id*.; *State v. White*, 03-1535 (La.App. 3 Cir. 4/28/04), 872 So.2d 588; *State v. Prudhomme*, 02-511 (La.App. 3 Cir. 10/30/02), 829 So.2d 1166, *writ denied*, 02-3230 (La. 10/10/03), 855 So.2d 324. The defendant did not make or file a motion to reconsider his sentence in the trial court. Nevertheless, we review his argument as a bare claim of excessiveness. *State v. Baker*, 08-54 (La.App. 3 Cir. 5/7/08), 986 So.2d 682.

This court set forth the following standard for reviewing excessive sentence claims:

> La.Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331 (citations omitted).

To decide whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has held:

> [An] appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La. 7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may

8

> provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir. 1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061. Further, "[a]s a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender." *State v. Hall*, 35,151, p. 4 (La.App. 2 Cir. 9/26/01), 796 So.2d 164, 169.

Applying the *Smith* factors, we note that the nature of the defendant's offense was not violent in itself, but it was another drug-related offense, which followed on the heels of a conviction for possession of cocaine with the intent to distribute. Additionally, it involved a significant amount of cocaine. The trial court did not order a pre-sentence investigation in this case. However, it was familiar with the defendant's criminal history, as it had reviewed the pre-sentence investigation report prepared in connection with the defendant's January 2007 convictions for possession of a Schedule II controlled dangerous substance with intent to distribute and unauthorized entry of an inhabited dwelling. Accordingly, the trial court was aware of the defendant's criminal history, one of the factors of La.Code Crim.P. art. 894.1. Although the trial court did not specifically address the individual factors of Article 894.1, it stated that it did not find any mitigating circumstances and that it found the defendant's prior convictions for possession of a Schedule II controlled dangerous substance with intent to distribute and unauthorized entry of an inhabited dwelling to be aggravating circumstances.

9

The record shows that the defendant was a twenty-two-year-old high school graduate when he was tried and that he had been employed at Con-Agra for about three months at the time of his arrest. Pursuant to La.R.S. 14:27 and 40:967(A)(1), he faced a sentence of up to two and one-half years imprisonment, with or without hard labor, and a fine of up to twenty-five hundred dollars. The trial court imposed the maximum sentence of two and one-half years at hard labor, to run consecutively to the sentence he was serving at the time of trial but did not impose a fine.

In *State v. Monette*, 99-1870 (La.App. 4 Cir. 3/22/00), 758 So.2d 362, the defendant, a first-felony offender, was convicted of possession of cocaine for possessing a pipe containing crack cocaine residue. She was also sentenced to two and one-half years at hard labor. The trial court initially suspended her sentence but made it executory after she failed to report to her probation officer only three weeks later.

In *State v. Herndon*, 513 So.2d 486 (La.App. 2 Cir. 1987), the defendant likewise was sentenced to two and one-half years at hard labor for the attempted possession of cocaine. The offense involved a substantial amount of cocaine while the defendant was already on probation, and he had prior convictions for felony drug offenses. His sentence was held not to be excessive.

Here, the defendant was serving a sentence for possession of cocaine with the intent to distribute and unauthorized entry of an inhabited dwelling when he was convicted herein. He has neither accepted responsibility for his actions, nor has he shown remorse. Under these circumstances, we find that the trial court did not abuse its discretion in sentencing him to the maximum term allowed.

## DISPOSITION

The defendant's conviction and sentence are affirmed.

## AFFIRMED.

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.