834 So.2d 483 (2002)
STATE of Louisiana
v.
David Emanuel ODLE and Andre Ricardo Shaw.
No. 02-0226.
Court of Appeal of Louisiana, Third Circuit.
November 13, 2002.
Rehearing Denied January 29, 2003.
*486 Michael Harson, District Attorney, David F. Hutchins, Asst. District Attorney, Lafayette, LA, for Plaintiff/Appellee State of Louisiana.
Richard V. Burnes, Alexandria, LA, for Defendant/Appellant, Andre Richardo Shaw.
Jon Scott Decuir, New Iberia, LA, for Defendant/Appellant David Emanuel Odle.
Court composed of SYLVIA R. COOKS, GLENN B. GREMILLION, and ELIZABETH A. PICKETT, Judges.
GREMILLION, Judge.
The defendants, David Emanuel Odle and Andre Ricardo Shaw, were both convicted of attempted possession of cocaine *487 (over 400 grams), in violation of La.R.S. 40:967(F)(1)(c) and La.R.S. 14:27 or La. R.S. 40:979. Odle was sentenced to eighteen years at hard labor and Shaw was sentenced to twenty years at hard labor. Both filed appeals challenging their convictions and sentences. For the following reasons, we affirm.

THE PROCEEDINGS
On June 2, 1997, Defendants were charged by bill of information with one count each of possession of over 400 grams of cocaine. Both Defendants, who were represented by the same attorney, entered written pleas of not guilty in June 1997. On October 15, 1998, the State filed a motion to determine whether a conflict of interest existed in the representation of Defendants by the same attorney. At the hearing on the motion, the trial court informed Defendants of the possibility of a conflict and of their right to be represented by separate counsel. Both Defendants indicated that they wanted the same attorney to represent them. The trial court found no conflict existed at that time and allowed counsel to represent them. Subsequently, a hearing was held on a motion to suppress filed by Defendants, which was denied. Defendants sought review of the denial in this court, and we found no error in the trial court's ruling. State v. Odle and Shaw, an unpublished writ 99-96 (La. App. 3 Cir. 3/25/99), writ denied, 99-1206 (La.5/14/99), 743 So.2d 651, cert. denied, 528 U.S. 953, 120 S.Ct. 377, 145 L.Ed.2d 295 (1999).
On the eve of trial, Counsel informed the trial court that Shaw had retained another attorney, Thomas Guilbeau. Counsel also stated for the record that Guilbeau's motion to continue and joint motion to withdraw and enroll as counsel was denied by the court. The trial court denied the motions to withdraw, enroll, and to continue; trial was scheduled to begin the following morning. Both Defendants proceeded to a trial by jury, with the jury subsequently returning a verdict of "attempted possession of cocaine" against each. In due course, Defendants were sentenced to serve thirty years at hard labor with the first fifteen years to be served without benefit of probation, parole, or suspension of sentence and to pay a fine of $300,000. A motion to reconsider sentence was granted and, at that hearing, Defendants were represented by separate attorneys, neither of whom were the original trial counsel. Pursuant to the motions to reconsider sentence, the trial court vacated the previously imposed sentences and sentenced Shaw to twenty years at hard labor and Odle to eighteen years at hard labor. The first ten years of both sentences were imposed without benefit of probation, parole, or suspension of sentence. No fines were imposed. Finally, on September 20, 2001, the trial court amended the sentences to delete the restriction on parole, probation, or suspension of sentence for the first ten years of each sentence. Both Defendants now appeal their convictions and sentences, assigning several assignments of error.

SUFFICIENCY OF EVIDENCESHAW
On May 11, 1997, Shaw was stopped for speeding. Odle was a passenger in the vehicle. As a result of Shaw's suspicious behavior, an overwhelming smell of gasoline and air fresheners, conflicting information given by both, a consent to search personal belongings given by Odle, and a narcotics alert by a canine, deputies searched the car. During the search, deputies found several sealed cans of cocaine in the vehicle's gas tank. Both Defendants were arrested for possession of the narcotics.
*488 Shaw claims the evidence was insufficient to find him guilty of the verdict renderedattempted possession of over 400 grams of cocaine. He does not dispute the existence of the cocaine in the gas compartment of the vehicle, but claims the evidence was insufficient "to show he had the requisite knowledge of the existence of and control over the cocaine." Shaw acknowledges that testimony was presented concerning excessive air fresheners found in the vehicle, as well as a WD-40 smell, but he claims that no evidence was presented showing that he was aware or should have been aware of any contraband in the gas tank. He further notes the fact that the drugs were found inside sealed containers located inside the gas tank and the vehicle belonged to his wife, which had been purchased only a few weeks before he and Odle, his cousin, took their trip.
We note that Shaw was found guilty of attempted possession of 400 or more grams of cocaine. Attempt is defined by La.R.S. 14:27(A)[1] as follows:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
La.R.S. 40:967(C) and (F)(1)(c) provide:
C. Possession. It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, as provided in R.S. 40:978 while acting in the course of his professional practice, or except as otherwise authorized by this Part.
F. Other penalties for possession.
(1) Except as otherwise authorized in this Part:
....
(c) Any person who knowingly or intentionally possesses four hundred grams or more of cocaine or of a mixture or substance containing a detectable amount of cocaine or of its analogues as provided in Schedule II(A)(4) of R.S. 40:964, shall be sentenced ...
It is clear from the definition of attempt found in La.R.S. 14:27, that a finding of specific intent to commit an offense is required to prove an attempt to commit that offense. Thus, the verdict rendered by the jury in the present case, attempted possession of 400 or more grams of cocaine, requires a finding of specific intent to commit the charged offense. However, the offense of possession of 400 or more grams of cocaine, requires a showing of general intent. In State v. Clift, 339 So.2d 755, 761 (La.1976), the supreme court found, "Louisiana law requires only a showing of general intent, not specific intent, in order to establish that a person is guilty of possessing heroin." The court cited the following language from State v. Banks, 307 So.2d 594, 596 (La.1975): "In spite of the words in R.S. 40:966 that `it shall be unlawful for any person knowingly or intentionally ...' to do the prohibited acts, the statute requires no more than general criminal intent." The charged offense in the present case, possession of 400 or more grams of cocaine, also contains the language, "It is unlawful for any person knowingly or intentionally to possess.... "La.R.S. 40:967(C). Thus, the specific *489 intent necessary to find the Defendant guilty of the responsive verdict of attempted possession of 400 or more grams of cocaine is more stringent than the general intent necessary to find him guilty of possession of the drugs.
In that regard, we look for guidance to State v. Cortez, 96-859 (La.App. 3 Cir. 12/18/96), 687 So.2d 515, where the defendant was charged with cruelty to a juvenile and convicted of attempted cruelty to a juvenile. Noting that the defendant did not object to the jury being given the responsive verdict of attempted cruelty to a juvenile, we determined that we should first examine whether there was sufficient evidence to find him guilty of the offense charged, cruelty to a juvenile.[2] We stated the following:
In State ex rel. Elaire v. Blackburn, 424 So.2d 246, 251-52 (La.1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983), the Louisiana Supreme Court held:
[I]f the defendant does not enter an objection [to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict] (at a time when the trial judge can correct the error), then the reviewing court may affirm the conviction if the evidence would have supported a conviction of the greater offense, whether or not the evidence supports the conviction of the legislatively responsive offense returned by the jury.
It would be unfair to permit the defendant to have the advantage of the possibility that a lesser "compromise" verdict will be returned (as opposed to being convicted of the offense charged) and then to raise the complaint for the first time on appeal, that the evidence did not support the responsive verdict to which he failed to object. Therefore, at least when the defendant fails to interpose a timely objection to a legislatively responsive verdict, this court will not reverse the conviction if the jury returns such a verdict, whether or not that verdict is supported by the evidence, as long as the evidence is sufficient to support the offense charged.
Pursuant to Elaire, therefore, we will first review the record for a determination of the sufficiency of the evidence related to the greater offense of cruelty to a juvenile. If we find that the evidence presented at trial would have been sufficient to sustain a conviction of cruelty to a juvenile, our analysis ends and we must affirm. If, however, we determine that there was insufficient evidence to uphold a guilty verdict for the greater offense, we will then review the sufficiency of the evidence for the responsive verdict of attempted cruelty to a juvenile.
Id. at 519.
Neither Defendant objected to the responsive verdicts given in the instant case. Therefore, considering our opinion in Cortez, we shall first review the sufficiency of the evidence as to the charged offense to determine if the evidence was sufficient to sustain a conviction for that offense.
This court has stated the following regarding the prosecution's burden of proving possession of 400 or more grams of cocaine:
In order for the State to obtain a conviction, it must prove the essential *490 elements of the offense, possession of cocaine, beyond a reasonable doubt. Pursuant to La.R.S. 40:967(F)(1)(c), the State must prove beyond a reasonable doubt that the defendant knowingly or intentionally possessed 400 grams or more of cocaine.
Defendant claims that the prosecution failed to prove he was in possession of the cocaine seized. However, the prosecution does not need to show that defendant was in actual possession of the illegal substance in order to convict, only constructive possession. State v. Edwards, 354 So.2d 1322 (La.1978). A person may be in constructive possession of the substance, even though not in physical possession, if it is subject to his dominion and control. State v. Sweeney, 443 So.2d 522 (La.1983). In order to convict a person on the basis of constructive possession, something more than mere presence in the area where the drug is found must be shown. State v. Alford, 323 So.2d 788 (La.1975). Some of the factors to consider in determining whether or not a defendant exercises dominion and control are his knowledge that illegal drugs are in the area, his relationship with the person found to be in possession, his access to the area where the drugs were found, and his physical proximity to the drugs. State v. Love, 527 So.2d 62 (La. App. 3 Cir.1988); State v. Walker, 514 So.2d 602 (La.App. 4 Cir.1987).
State v. Dickerson, 579 So.2d 472, 481 (La. App. 3 Cir.), writ granted in part on other grounds, 584 So.2d 1140 (La.1991).
On May 11, 1997, Deputy Todd Mouton of the Lafayette Parish Sheriff's Office observed a black Nissan Pathfinder traveling at a high rate of speed. The vehicle was driven by Shaw; Odle was a passenger. When Deputy Mouton stopped the vehicle, he stated that Shaw exhibited abnormal behavior in that he approached him in a very aggressive manner and would sit very close to him at times. He also noticed discrepancies in the vehicle's paperwork, in the addresses used on the license, bill of sale, and temporary tag. He testified that these two things aroused his suspicions.
When Deputy Mouton approached Odle, Odle appeared to have a "kind of ... nervous fear, looking straight ahead." He stated that it was obvious that Odle saw him standing next to the window, but he had to tap on the window and motion for him to roll it down before Odle would look at him. As he walked to the passenger window and spoke with Odle, Deputy Mouton noticed a petroleum-type smell and an air-freshener smell. At first, he thought the smell was similar to WD-40. He said that he returned to his vehicle to conduct a driver's license check and to write a citation and, while doing so, he called for another officer. Continuing to observe both Shaw and Odle, Deputy Mouton noticed that Shaw's nervous behavior was starting to become a problem. When asked how this was exhibited, Deputy Mouton stated:
When I had the verbal conversation with him, if I asked him simple or superficial things, like information about his driver's license, he looked directly at me, was calm about it, anything that was of an empirical nature. When I started to ask about his travel plans, which he said he was coming from Houston, he would look often away, he would hesitate, pause. He would start off by saying thatYou know, those are things that I've been taught and, in my experience, tend to lead or indicate to me that they may be thinkingor fabricating the responses.
At one point, Deputy Mouton specifically asked Shaw if he was being deceptive.
*491 Although he did not testify as to Shaw's response, Deputy Mouton testified that Shaw appeared to become a little more nervous when asked questions. He asked Shaw if he had any weapons or narcotics in the vehicle, and Shaw stated that he did not. When he asked Shaw if he could verify this by searching the vehicle, Shaw told him it was getting late and he did not have time.
Deputy Mouton spoke with Odle again and explained to him that he had given Shaw a traffic citation. The deputy learned from Odle that he and Shaw were cousins and that they shared the same home address. According to Deputy Mouton, some of the information Odle gave him conflicted with information given to him by Shaw. Odle told Deputy Mouton that he had a bag of clothes in the vehicle and was willing to show the bag to the deputy when the other officer and canine arrived. The canine began sniffing around the exterior of the vehicle and Deputy Mouton noticed what he considered to be an alert by the canine to the presence of drugs. The canine began to alert on the rear portion of the vehicle, just in front of the right fender wall, on the driver's side. When the canine was secured, Deputy Mouton opened the hatchback and had Odle identify his bag. Upon opening the hatchback, the deputy realized that the smell he earlier thought was WD-40 was actually gasoline. Deputy Mouton testified that he found a blue rag that was kind of damp with what he thought was gasoline.
Deputy Mouton also noticed a lot of air fresheners. The other officer had begun searching from the front of the vehicle and, between the two of them, they found "paint air freshener," a can of "potpourri spray," a can of "gelatin scented" concentrate, and a square sheet of air freshener. The square sheet was found in the cargo area of the vehicle. Although Deputy Mouton did not know what it was at first, he later learned that it was a commercial grade air freshener that is normally put in large air-conditioning systems.
Continuing his search, Deputy Mouton noticed rust and excessive marring and scratching on the screw heads inside the interior of the rear cargo area. He noted that the vehicle was fairly new and that such rust, marring, and scratching were abnormal. Deputy Mouton stated that those markings were similar to those he had seen in other compartments which had been removed excessively for smuggling narcotics.
When Deputy Mouton asked Shaw about the gasoline rag, Shaw explained that he overfilled the gas tank and used the rag to wipe the gasoline off the paint finish. Deputy Mouton investigated Shaw's explanation by checking the area around the gas tank and found that it was dirty and still damp from the previous filling where gas had spilt. Deputy Mouton said "that not only did it have fresh spillage, but that it spilled before and never actually wiped it up." He also commented, "What I'm indicating is that there were fresh and old spill marks on the exterior of that tank. And judging from the old spill marks that were there, would not account for the rag that still smelled and were still damp or tacky to the touch." When Deputy Mouton looked closer at the gas tank through the fender well, he could also see where there was fresh and still damp spillage on top of the tank and running down the side, which he said was extremely unusual. He also testified that he could see newer aluminum hose clamps that did not appear to be "factory-type products that were replaced on there."
Deputy Mouton stated he then began removing the scratched screws and discovered a large, easily removed access plate to the sending unit of the gas tank. When *492 asked what happened next, Deputy Mouton testified:
Well, I recognized that from other cases where drugs had been smuggled in the gas tank through or by removing the sending unit. I, too, removed the four screws to the sending unit and removed that. At that point I could see a large amount of cans inside the gas tank....
According to Deputy Mouton, the cans of cocaine were secured with large magnets.
Deputy Mouton explained that the float mechanism, which indicates how much gasoline is in the tank, was rigged in such a manner that the gas gauge would always read full. This he claimed was done "[t]o throw off officers at the stop." Deputy Mouton field tested the white powder found in one of the cans and it tested positive for cocaine; at that point, both Odle and Shaw were arrested.
Deputy Craig Noel, the other officer responding to the stop, testified he believed that the air fresheners found were used to conceal any odors emanating from the vehicle. According to him, it was also a common practice to use such air fresheners in order to confuse the drug dog. Deputy Noel also noticed a dusty appearance on the exterior of the vehicle where the gas cap is located, and stated that there was no indication that the area had been wiped with a rag.
In addition to other testimony, a video of the stop and seizure was introduced into evidence. We reviewed the video and note that it corroborates the testimony of Deputies Mouton and Noel.
Considering the evidence, particularly the fact that Shaw was acting abnormally, gave information to the police that was inconsistent with that given by Odle, was surrounded by a gasoline smell as well as an air freshener smell while in the vehicle, along with the fact that rags containing gasoline were found in the cargo area of the vehicle and his explanation for them was lacking, the fact that the gas tank had recently been tampered with, was geared to always read full, and there were several cans of cocaine hidden in the gas tank, we find that sufficient evidence was presented to the jury for it to find that Shaw constructively possessed the cocaine.

MOTION FOR CONTINUANCE
Shaw claims the trial court erred in denying his motion for continuance. On the day prior to trial, Shaw informed the trial court that he desired to be represented by Guilbeau. Original counsel for Shaw stated that Guilbeau had filed a motion to continue, as well as a joint motion to withdraw and enroll as counsel of record. Even though Counsel signed the motion to withdraw, the trial court denied both motions because it felt that the motion to withdraw was a delay tactic and the motion for continuance because Guilbeau was not the attorney of record. Counsel then requested a continuance, claiming that he was not adequately prepared to try the cases since he was presently involved in another jury trial and was not accustomed to trying criminal cases back to back. Counsel claimed that he was concerned that he would not provide the level of competency required for the case, that he had brushed Shaw's case off because of his other case, and that Shaw's hiring of another attorney demonstrated his lack of confidence in him. He gave as a second reason for the continuance that Shaw had fired him which, again, suggested Shaw's lack of confidence him. Counsel further stated that, while he was present in this case, his attention was with the other trial and his client in that case, where they were waiting for the jury to return.
*493 After the trial court asked him several times why he had not asked for a continuance earlier when he saw that both cases were scheduled back-to-back, Counsel finally stated that his objective was to leave the present case on the docket and try to negotiate a plea. We note that after more discussion, the trial court told Counsel that it had no reservations about his ability to perform well on this case.
The trial court also considered a comment made by Counsel, wherein he stated that Shaw was not confident in him as his trial counsel, so Shaw made a "strategic move." The trial court referred to that comment in connection with Counsel's discharge on the day of trial as a "strategic discharge." "Strategic as in an effort to delay the prosecution of this case." "I denied the Motion to Withdraw and Substitute Counsel because it appeared to me, as apparently it appeared to you, that that was a strategic move to delay the trial," and that Shaw had gone out and hired another attorney "for strategic reasons."
Finally, the trial court considered the fact that Counsel had been employed by Shaw initially in this case and had been on the job for more than two years; he had filed a motion to suppress in this matter which was denied; he took a supervisory writ to our court, and subsequently, applied for supervisory writs not only to our supreme court but to the United States Supreme Court. Further, the State communicated with Counsel a week before the trial and told him that this case was a priority case and that it was coming up for trial. During that conversation, the State's attorney claimed that Counsel agreed to stipulate to a certain witness, but gave no indication that the case should not go to trial. In their opinion, the State thought Counsel knew the case very well and gave several instances of attorneys trying cases back-to-back. Accordingly, the trial court then denied the motion to continue and ordered that the trial begin the next morning.
Both Defendants filed an emergency writ application with this court, arguing that Counsel was not adequately prepared for trial since he had been in another felony trial, and arguing that forcing Shaw to be represented by him at trial would deny him his right to his choice of counsel, as well as his right to effective assistance of counsel. On December 1, 1999, we denied the writ and the stay, stating, "We find no abuse of discretion in the trial court's rulings." State v. Odle and Shaw, an unpublished writ 99-1862 (La.App. 3 Cir. 12/1/99).
In State v. Schmidt, 99-1412, p. 38 (La. App. 3 Cir. 7/26/00), 771 So.2d 131, 152, writ denied, 00-2950 (La.9/28/01), 798 So.2d 105, cert. denied, 535 U.S. 905, 122 S.Ct. 1205, 152 L.Ed.2d 143 (2002), quoting State v. Hebert, 97-1742, p. 9 (La.App. 3 Cir. 6/3/98), 716 So.2d 63, 67-68, writ denied, 98-1813 (La.11/13/98), 730 So.2d 455, cert. denied, 529 U.S. 1072, 120 S.Ct. 1685, 146 L.Ed.2d 492 (2000), we wrote the following regarding the effect the denial of a pre-trial writ application has on an issue when that issue is subsequently re-asserted on appeal:
It is well-settled that a defendant may, once again, seek review of a pretrial ruling by the trial court even after the denial of a pretrial supervisory writ application seeking review of the same issue.
The prior denial of supervisory writs does not bar reconsideration of an issue on appeal, nor does it prevent the appellate panel from reaching a different conclusion. State v. Fontenot, 550 So.2d 179 (La.1989); State v. Decuir, 599 So.2d 358 (La.App. 3rd Cir.1992), writ denied, 605 So.2d 1095 (La.1992). When a defendant does *494 not present any additional evidence on this issue after the pre-trial ruling, the issue can be rejected on appeal. See, e.g., State v. Regan, 601 So.2d 5 (La.App. 3rd Cir.1992), writ denied, 610 So.2d 815 (La.1993); State v. Wright, 564 So.2d 1269 (La.App. 4th Cir.1989). Judicial efficiency demands that this court accord great deference to its pre-trial decision unless it is apparent that the determination was patently erroneous and produced unjust results. State v. Decuir, supra, at 360.
In attacking the trial court's denial of the motion for continuance, Shaw asserts the same grounds raised in the pre-trial supervisory writ application, that is, Counsel was not prepared and Shaw should not have been forced to trial without counsel of his choice. While we realize that these grounds were previously raised in the pre-trial writ application and that we should give great deference to our pre-trial decision, we shall, in the interest of justice, reexamine these arguments in light of additional arguments raised by Shaw on appeal.
The decision whether to grant or deny a motion for a continuance rests within the sound discretion of the trial judge, and a reviewing court will ordinarily not disturb the lower court's determination absent a clear abuse of discretion and a showing of specific prejudice. State v. Bourque, 622 So.2d 198, 224 (La.1993); State v. Champion, 412 So.2d 1048, 1051 (La.1982).
State v. Ste. Marie, 99-2480, p. 4 (La.9/15/00), 770 So.2d 315, 318, appeal after remand, 97-168 (La.App. 3 Cir. 4/18/01), 801 So.2d 424. Shaw asks us to consider a number of issues in determining the prejudice suffered by him in being denied the continuance which are: several ineffective assistance of counsel claims, including the lack of conflict-free counsel; lack of preparation by counsel; counsel's failure to make certain objections; and counsel's failure to file certain pre-trial motions. We will address Shaw's claim that he was denied his right to conflict-free counsel later in this opinion.
The other ineffective assistance of counsel claims asserted by Shawhis counsel's failure to prepare for trial, his counsel's failure to object to an improper jury charge which failed to include all responsive verdicts, his counsel's error in committing the defendants during voir dire to not presenting any evidence at trial, his counsel's failure to present evidence, and his counsel's failure to file post-trial motionssupport his argument that the trial court should have granted a continuance because of his counsel's lack of preparation. None of the claims, however, are substantiated. Shaw offers no specific evidence or witnesses that would have been introduced or arguments that would have been made had his counsel been granted the continuance. Additionally, Shaw fails to prove that his counsel's failure to object to the responsive verdicts given to the jury was based on lack of preparation rather than trial strategy. As for his claim that his counsel erred in telling the jury that it would not present any evidence and in actually failing to present any evidence, Shaw failed to show that this decision was based on a lack of preparation rather than trial strategy. Furthermore, Shaw fails to specify any witnesses or evidence that should have been presented in his defense, nor does he specify any post-trial motions his counsel should have filed, but neglected to do so.
Shaw cites State v. Hayes, 95-1170 (La. App. 3 Cir. 3/6/96), 670 So.2d 683, and State v. Brooks, 452 So.2d 149 (La.1984), in support of his claim that the trial court erred in denying the motion for continuance.
*495 Both cases are distinguishable from the case at hand. In Hayes, the defendant was not represented by counsel on the day of trial, and the trial court appointed counsel from the Indigent Defender Board to represent him. Although the newly appointed counsel informed the trial court that he was not prepared to represent the defendant because he had received no prior notice, the trial court nonetheless insisted that trial proceed. "Except for voir dire, defendant had no legal assistance or representation at all and conducted no defense; even though throughout the trial he continued to request the assistance of counsel." Id. at 687. Also noting that the trial court failed to obtain a valid waiver of the defendant's right to counsel, we reversed the defendant's conviction and remanded the case for a new trial.
In Hayes, we analyzed Brooks as follows:
[T]he defendant's family hired a new attorney to represent him two days before trial. The new attorney was allowed to enroll as counsel but denied a motion for continuance. Thereafter, this new attorney did absolutely nothing on behalf of his client except remain in the courtroom during the trial. The Louisiana Supreme Court ruled that the defendant's right to the assistance of counsel had not been knowingly and intelligently waived, thereby resulting in a reversal of his conviction. Although the supreme court noted that they could not speculate whether the defendant quietly went along with an affirmative effort to build reversible error or whether his lack of response when his lawyer did nothing was an implied waiver of his right to counsel, the record affirmatively showed that he was not represented by counsel at trial. Brooks, 452 So.2d 149.
Id. at 686.
We note a more recent case, State v. Laugand, 99-1124, 99-1327 (La.3/17/00), 759 So.2d 34, wherein the supreme court reversed the defendant's conviction because the defendant's pre-trial motion for continuance had been erroneously denied. In Laugand, the defendant was appointed new counsel and the trial court granted a motion to continue the trial for one month. On the day of trial, counsel appeared and claimed that he was "fresh from trial in another parish and that as the result of a scheduling conflict, he had been unable to prepare relator's case for trial." Id. at 36. The supreme court noted that Laugand's counsel was "physically available to try the case and, unlike the defense attorney in Brown,[3] he did not stand mute after the trial court denied his motion for a continuance but cross-examined the state's witnesses and argued the case to jurors at the close of evidence." Id. The supreme court explained, however, that the defendant's writ application must be granted nonetheless:
Nevertheless, we granted relator's application for supervisory review because the record proceedings below not only corroborates counsel's assertion he had not prepared relator's case but also reveals that the trial court had to intervene to keep counsel from pursuing matters which appeared directly adverse to relator's interests, notably, cross-examination of a police witness which threatened to reveal relator's arrest on other serious charges, and which prompted an incendiary confrontation between counsel and relator in open court. The incident clouds confidence that the judicial *496 process functioned properly in this case and was one we could not have anticipated when we denied relator's pre-trial application to review the denial of his motion to continue with the comment that "[d]efendant may reraise on appeal in the event of conviction." State v. Laugand, 97-0516 (La.2/27/97), 689 So.2d 1368 (Lemmon, J., concurring). It further appears that counsel embarked upon trial by issuing an instanter subpoena for a missing alibi witness who ultimately could not be located because he had moved, but did not bring the problem to the court's attention until after the state rested its case. This omission prompted the court to express for the record its own frustration that "[a]t no time did Counsel ask any assistance of this Court to get this witness in," and to observe that counsel had, in any event, failed to file the notice of alibi defense required by La.C.Cr.P. art. 727.
Counsel thereby failed to lay the legal groundwork for presenting an alibi defense; subpoenaed a witness under circumstances which suggested not an informed professional assessment that an alibi defense was a viable one but a desperate attempt to cobble together any defense at the last moment; failed even to provide the court with all of the information necessary to make a fully informed decision on the continuance motion; and, once trial began, pursued questioning of the state's witnesses at trial which revealed lack of even a rudimentary knowledge of the circumstances surrounding the investigation of the crime and the arrests of relator and his co-defendant. Given these circumstances, we agree with Judge Plotkin, who dissented from the panel opinion which affirmed relator's conviction and sentence for second degree murder, that while "[i]t is frustrating to continue a trial where one side is prepared to go forward ... forcing an attorney to trial who is unprepared does not punish the attorney for his/her lack of readiness, it merely punishes the defendant who is unable to present an adequate defense." State v. Laugand, 97-1554, p. 3 (La.App. 4th Cir.4/7/99), 738 So.2d 209 (unpub'd) (Plotkin, J., dissenting).
Id. at 36.
Although the facts of Laugand are somewhat similar to the facts in the present case, it is also distinguishable. Unlike the counsel in Laugand, who was appointed one month prior to trial, Counsel in the present case had represented the Defendants since their initial plea of not guilty, over two years prior to the day the motion for continuance was filed. Counsel filed a motion to suppress on behalf of the Defendants, sought review in this court when the motion to suppress was denied, and sought review in the supreme court when this court denied Defendants' relief. State v. Odle and Shaw, an unpublished writ bearing docket number 99-96 (La.App. 3 Cir. 3/25/99). The record before this court is replete with motions filed by Counsel on behalf of Defendants prior to trial. During voir dire examination, Counsel exercised challenges for cause on behalf of Defendants. He presented opening and closing arguments, cross-examined state witnesses, and asserted objections, as well as a motion for mistrial. No glaring inadequacies such as the ones discussed by the supreme court in Laugand have been asserted by Shaw on appeal, nor do we find any in the record before us.
Accordingly, we find the trial court did not abuse its discretion in denying Defendants' motion for continuance and this assignment of error is without merit.

EFFECTIVE ASSISTANCE OF COUNSELSHAW
Shaw claims he was denied the effective assistance of counsel because he was denied *497 the right to conflict-free counsel, and his counsel failed to prepare for trial, erred in committing the defendants during voir dire examination to not presenting any evidence at trial, failed to object to an improper charge to the jury which failed to include all responsive verdicts, and failed to file post-trial motions.
Right to Separate Counsel
On October 15, 1998, the State filed a "Motion to Determine Whether a Conflict of Interest is Present in the Representation of the Above Named Defendants" pursuant to La.Code Crim.P. art. 517. At the hearing, the trial court asked both Defendants if it was their desire to be represented by the same attorney, and informed them of the possibility of a conflict. Shaw stated that he wanted the attorney to represent both of them and that he understood the possibility of conflict. The trial court also stated that, if the joint representation became a problem, it might find that Defendants waived their right to ask for separate counsel. The trial court then advised that, if a potential conflict arose, Counsel had an obligation to advise the trial court. The State then interjected that it thought there was a potential conflict because the narcotics were found in a car driven by Shaw in which Odle was a passenger. Counsel disagreed claiming there would be no finger pointing in this case. Even in the face of those comments, the trial court found that there was no conflict at the time.
After the trial court denied Defendants' motion for continuance on the eve of trial, Shaw claimed he now had a conflict with Odle. According to Counsel, this was the first time Shaw made mention of such a conflict. Counsel informed the court that Guilbeau also believed there would be a conflict. Shaw stated that it was not until he talked to Guilbeau and explained: "it's a conflict between me and David Odle to have the same attorney, an attorney representing both of us, and I decided to hire Mr. Thomas Guilbeau for my attorney at that point." Shaw also stated that he was being pushed to the side and did not think he could get a fair trial if Counsel represented both him and Odle. Shaw said that he did not see eye to eye with Counsel and that he and Odle saw the case in "different directions."
After hearing Shaw's testimony and the arguments of counsel, the trial court ruled as follows:
More than a year ago, Mr. Shaw, as well as Mr. Odle, were apprized of their constitutional right to have a conflict-free attorney, a Sixth Amendment right to a conflict-free attorney. After having been so advised, they considered the matter carefully and decided to waive that particular right and decided it was in their best interest to proceed to trial with the lawyer that they had retained.
And then today, on the eve of trial, we've had [Defense Counsel] fight the valiant fight, going all the way to the Supreme Court of the United States of America in order to defend these two individuals. [Defense Counsel], who is a competent and well-known lawyer in our jurisdiction, has tried many criminal trials and has, in my judgment, the capacity to try this case in a very successful manner.
And Mr. Shaw, after having talked with another lawyer, has discovered a way to possibly continue the trial, delay the trial once more; hires the lawyer; the new lawyer is unprepared. [Defense Counsel] has been preparing for this case for years. A new lawyer gets the case in a matter of hours. Obviously, the new lawyer is not prepared, so we have to grant a continuance. This appears to me to be a strategic move to delay the case.

*498 We're at a posture to try the case. All the pre-trial matters have been addressed. It's time to try the case. Mr. Shaw has already made his decision on how to proceed with the case. We will proceed in accordance with Mr. Shaw's wishes, and we'll begin the jury selection tomorrow morning at 9:30.
Right to Effective Assistance of Conflict-Free Counsel
Even though this issue may have been presented to this court in the Defendants' pre-trial supervisory writ application, no mention was made of the conflict issue, and the prayer for relief asked only for the continuance to be granted. It did not make a request for this court to grant Shaw separate counsel. Thus, out of an abundance of caution, we shall address the conflict issue at this time.
When a defendant raises the issue of a conflict of interest prior to trial, the trial court "is required `either to appoint separate counsel or to take adequate steps to ascertain whether the risk [of a conflict of interest] was too remote to warrant separate counsel.'" State v. Edwards, 430 So.2d 60, 62 (La.1983), quoting Holloway v. Arkansas, 435 U.S. 475, 484, 98 S.Ct. 1173, 1176, 55 L.Ed.2d 426 (1978). In State v. Foster, 97-1960 (La.1/9/98), 704 So.2d 1171, motion to enforce denied, 97-1960 (La.9/18/98), 721 So.2d 478, the supreme court cited Hamilton v. Ford, 969 F.2d 1006, 1011 (11th Cir.1992), cert. denied, 507 U.S. 1000, 113 S.Ct. 1625, 123 L.Ed.2d 183 (1993), for the following proposition:
[W]hen defendants make timely objections to joint representation, they need not show an actual conflict of interest when a trial court fails to inquire adequately into the basis of the objection. In such circumstances the trial court has failed to discharge its constitutional duty under Holloway to determine whether the defendants are receiving adequate assistance of counsel ... [and] [r]eversal is automatic."
In Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), the Supreme Court clarified the trial court's role in addressing a request for conflict-free counsel that is made solely for the purpose of delaying trial:
The State has an obvious interest in avoiding such abuses. But our holding does not undermine that interest. When an untimely motion for separate counsel is made for dilatory purposes, our holding does not impair the trial court's ability to deal with counsel who resort to such tactics.
Id. at 486-87, 98 S.Ct. at 1180. Finally, the Supreme Court in Holloway stated: "An `attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.'" Id. at 485, 98 S.Ct. at 1179, quoting State v. Davis, 110 Ariz. 29, 31, 514 P.2d 1025, 1027 (1973).
Since, in the present case, the first hearing at which joint representation was discussed was held pursuant to a motion filed by the State, we shall not consider it as a notice of conflict made by Shaw. State v. Castaneda, 94-1118 (La.App. 1 Cir. 6/23/95), 658 So.2d 297. Thus, the only notice of conflict made by Shaw was the notice he gave on the day prior to trial.[4] As discussed above, Shaw himself stated that a conflict existed because Guilbeau *499 told him such a serious case would present a conflict, he and Odle saw the case in different directions, and he and Counsel did not see eye-to-eye.
Although the trial court may have failed to specifically state in its ruling that the possibility of a conflict was remote, such a conclusion can be implied by the evidence introduced in support of Shaw's pro se request for conflict-free counsel. Shaw's allegations of a conflict were general. Although he asserted that he and Odle saw the case in different directions, he did not assert that they would claim antagonistic defenses. After reviewing the trial transcript, we note that Defendants did not assert antagonistic defenses. Additionally, at no time during the hearing did Counsel state that a conflict existed. As stated by the Supreme Court in Holloway, the attorney representing the co-defendants is in the best position to inform the trial court as to whether a conflict exists. Finally, we find the trial court was correct in its determination that the notice of conflict made by Shaw was a dilatory tactic, the sole purpose being to delay trial. Accordingly, we hold that the trial court did not err in failing to appoint separate counsel to represent Shaw.
Shaw argues on appeal that he was not able to testify as to the reasons Guilbeau felt a conflict existed. Apparently, Shaw is referring to the portion of the hearing wherein Counsel asked him to tell the trial court what Guilbeau indicated was the conflict. The State interrupted, stating that it thought Shaw himself was going to tell the trial court why he thought a conflict existed. Counsel rephrased the question by asking Shaw, "[A]fter discussing the matter with Mr. Guilbeau, what did you believe was the conflict?" Shaw answered, "As serious as this case is, having one attorney to represent both of us .... Um, to have one attorney representing both of us, I and David Odle, and we think it wouldn't be fair, more or less." That colloquy does not indicate that Shaw was prevented from stating the reasons given by Guilbeau. Furthermore, Counsel did not object to any perceived prevention.
Shaw further claims that the trial court erred in failing to hold another Garcia hearing when it was not the trial court presiding over the first hearing wherein he and Odle were advised of their right to separate counsel. A Garcia hearing is based on the case of United States v. Garcia, 517 F.2d 272 (5th Cir.1975), abrogated on other grounds by Flanagan v. United States, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), wherein the Fifth Circuit held that a defendant may waive his right to conflict-free counsel after the defendant has had a thorough consultation with the trial court and knowingly, intelligently, and voluntarily waives that right. In 1997, La.Code Crim.P. art. 517 was enacted to require trial courts to conduct a Garcia type hearing, but the article seems to require a less-stringent hearing. Article 517 provides:
A. Whenever two or more defendants have been jointly charged in a single indictment or have moved to consolidate their indictments for a joint trial, and are represented by the same retained or appointed counsel or by retained or appointed counsel who are associated in the practice of law, the court shall inquire with respect to such joint representation and shall advise each defendant on the record of his right to separate representation.
B. Unless it appears that there is good cause to believe that no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.
*500 As previously discussed, a hearing was held on October 15, 1998, wherein Defendants were advised of the possibility of a conflict and given the opportunity to inform the court of their desire to be represented by separate counsel. Both Defendants indicated their desire to be represented by Willard. Shaw does not argue that the October 15, 1998 hearing was inadequate or that the requirements of La.Code Crim.P. art. 517 were not fulfilled. Rather, he argues that a new hearing should have been held when he asserted his right to conflict-free counsel. In support, Shaw argues that the trial judge that presided when he later asserted his right to separate counsel was different from the trial judge which presided over the October 15, 1998 hearing, and that the second trial judge did not have a transcript of the October 15th hearing. Since Shaw does not argue that the October 15th hearing was inadequate and does not cite any law to support his claim that a new hearing should be held merely because the presiding judge changed, he fails to support his claim that he was entitled to a second hearing. Additionally, when the trial court was informed of Shaw's belief that a conflict existed, the trial court appropriately inquired further into the issue of whether a conflict actually existed.
Finally, Shaw claims that the conflict of interest became apparent during jury selection. According to Shaw, the trial court instructed the jury that the defense may or may not call witnesses. In response, Counsel stated, "American Law does not require us to call witnesses, so we won't be. Thank you." Later during jury selection, according to Shaw, Counsel again stated that the defense would not be calling any witnesses because they were not required to do so. Shaw argues that the statements to the jury by the trial court and the responses made by Counsel committed the defense to not presenting testimony and to Defendants not testifying at trial. Consequently, they did not testify. Accordingly, Shaw argues that any factual defense that either he or Odle had was not presented to the jury. However, he does not show how Counsel's failure to call witnesses indicates a conflict of interest existed. To the extent he is arguing that Counsel was ineffective for failing to present a defense, that issue should be preserved for post-conviction relief, as the record before us is not sufficient to address that claim.
Finally, Shaw does not address his claims of ineffective assistance of counsel regarding Counsel's failure to prepare for trial and to file post-trial motions. Thus, these claims have been abandoned. For the foregoing reasons, this assignment of error lacks merit.

RESPONSIVE VERDICTSSHAW
Shaw claims the verdict returned by the jury was not responsive to the charged offense and, thus, was invalid. Additionally, he claims the trial court erred in its charge to the jury and in failing to include certain mandatory responsive verdicts. The following responsive verdicts were given to the jury:
1. Guilty of Possession of 400 or more grams of cocaine.
2. Guilty of Attempted Possession of 400 or more grams of cocaine.
3. Not Guilty.
The jury returned a verdict of "Guilty of Attempted Possession." In its instructions, the trial court instructed the jury as to the charged offense of possession of 400 or more grams of cocaine, as well as the responsive verdicts of attempted possession of 400 grams or more of cocaine, and not guilty. After the jury retired to deliberate, the trial court specifically allowed the parties the opportunity to state their *501 objections for the record. No objections were recorded.
The record reflects that the jury asked two questions during deliberations. First, the jury asked the trial court to explain the difference between possession and attempted possession. In response, the trial court instructed the jury as to the general definition of possession of cocaine, including constructive possession, as well as the responsive verdict of attempted possession of 400 or more grams of cocaine. The trial court specifically informed the jury of the following: If you are not convinced that the defendants are guilty of possession of over 400 grams or more or [sic] cocaine, but you are convinced beyond a reasonable doubt that the defendants are guilty of attempted possession of 400 grams or more of cocaine, the form of your verdict should be: `Guilty of attempted possession of 400 or more grams of cocaine.'
Later, during deliberations, the jury requested to be re-instructed as to the "attempted possession portion only." The trial court instructed the jury as to the general definition of attempt, and, pursuant to the jury's request, read the following paragraph twice:
Because an attempt is a lesser grade of the intended offense, the defendant may be convicted of an attempt although it appears at trial that the defendant actually committed the completed offense which he is charged with attempting to commit.
After the jury again retired for deliberations, it announced to the trial court that it had reached a verdict. The jury returned a verdict of "attempted possession" against each Defendant. The record does not reflect that any objection was made to the verdict rendered.
First, Shaw claims that the trial court erred in allowing the jury to return a verdict that was not listed on the verdict form. We note again that Shaw did not object to the verdict rendered. He claims, however, that his attorney was ineffective for failing to object to the verdict. Because the non-responsiveness of the jury's verdict is an error patent, we shall review this issue even though Counsel failed to object. State v. Mayeux, 498 So.2d 701 (La.1986). However, we hold that the verdict returned by the jury in the present case was responsive. La.Code Crim.P. art. 810 requires the jury's verdict to "clearly convey the intention of the jury." The jury in the present case was instructed as to only three possible verdicts. The verdict form only contained these three verdicts. In State v. Williams, 386 So.2d 1342, 1347 (La.1980),[5] the supreme court stated the following when addressing a similar error:
La.Code Crim.P. art. 810 provides that a verdict must clearly convey the intention of the jury. When faced with an ambiguous verdict, the intent of the jury can be determined by reference to the pleadings, the evidence, the admissions of the parties, the instructions, or the forms of the verdict submitted. State ex rel. Miller v. Henderson, 329 So.2d 707 (La.1976); State v. Broadnax, 216 La. 1003, 45 So.2d 604 (1950). In Broadnax, the defendant was charged with possession of heroin and the jury returned a verdict of "guilty of attempted possession." This court held that there was no doubt that the verdict as returned was sufficient in form to ascertain the jury's intention when the bill of *502 information and references to heroin in the record were considered.
In the instant case, the bill of information charges defendant with possession with intent to distribute heroin. In addition, the state produced an expert witness who identified the substance as heroin and all testimony in the record relates to no other substance but heroin. When the verdict is construed in light of the repeated references to heroin as the controlled dangerous substance which defendant was charged with possessing with the intent to distribute, there is no doubt as to the jury's intent to find defendant guilty of possession of heroin. The verdict was clearly responsive to the charge.
Likewise, considering the bill of information in the present case, along with the trial court's instructions to the jury and the verdict form, it is clear that the jury intended to find Defendants guilty of the responsive verdict of attempted possession of 400 or more grams of cocaine.
Secondly, Shaw claims that the trial court gave an incorrect charge to the jury. Citing State v. Williams, 471 So.2d 255 (La.App. 1 Cir.), writ denied, 475 So.2d 1102 (La.1985), he claims the responsive verdicts should have been:
1. Guilty of Possession of 400 or more grams of cocaine.
2. Guilty of Attempted Possession of 400 or more grams of cocaine.
3. Guilty of Possession of 200 or more grams of cocaine.
4. Guilty of Attempted Possession of 200 or more grams, but less than 400 grams, of cocaine.
5. Guilty of Possession of 28 grams or more, but less than 200 grams, of cocaine.
6. Guilty of Attempted Possession of 28 grams or more, but less than 200 grams, of cocaine.
7. Guilty of Possession of Cocaine.
8. Guilty of Attempted Possession of Cocaine.
9. Not Guilty.
However, there was no request made for the jury to be instructed as to the responsive verdicts listed above nor was a request made for the above verdicts to be included on the verdict form. La.Code Crim.P. art. 801(C) provides in pertinent part, "A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error." In State v. Craddock, 307 So.2d 342 (La.1975), the defendant claimed that the trial court's failure to include certain responsive verdicts was an error patent. The supreme court held:
We hold that alleged error concerning the sufficiency of the list of responsive verdicts given the jury, like error in the judge's charge to the jury, is not reviewable under Art. 920(2) and may not be considered unless objection is made in the trial court in time for the trial judge to correct the error.
Id. at 343. Accordingly, the supreme court did not consider the merits of the defendant's claim. Likewise, Shaw is precluded from seeking review of the trial court's failure to include the above verdicts as responsive verdicts. See also State v. Jamison, 93-1633 (La.App. 3 Cir. 5/4/94), 640 So.2d 438, writ denied, 94-1439 (La.10/7/94), 644 So.2d 631 and State v. Henry, 449 So.2d 486 (La.1984). Shaw also waived any error in the trial court's instructions to the jury by failing to object. State v. Howard, 98-0064 (La.4/23/99), 751 So.2d 783, cert. denied, 528 U.S. 974, 120 *503 S.Ct. 420, 145 L.Ed.2d 328 (1999). Finally, Shaw's claim that his counsel was ineffective for failing to object to the instructions, as well as failing to object to the verdict rendered by the jury should be preserved for post-conviction relief, wherein a full evidentiary hearing may be held. The record is insufficient to determine whether Counsel's failure to object was due to trial strategy or some other reason.

PROPER SENTENCESHAW
In this assignment, Shaw claims the verdict rendered by the jury was guilty of attempted possession of cocaine, without any finding as to the quantity of drugs found. Accordingly, he argues, that if this court finds the verdict is valid, he should have been sentenced to the penalty provision for attempted possession of cocaine rather than attempted possession of 400 or more grams of cocaine. As discussed above, the jury's verdict was clearly attempted possession of 400 or more grams of cocaine. Thus, the trial court properly sentenced Shaw pursuant to the penalty provision for that offense. Therefore, this assignment of error lacks merit.

EXCESSIVE SENTENCESHAW
Shaw next claims that the trial court erred in sentencing him to an unconstitutionally excessive sentence of twenty years at hard labor. At the time Shaw committed the crime of attempted possession of 400 or more grams of cocaine, the penalty range for the completed offense was thirty to sixty years at hard labor, with the first thirty to be served without benefit of probation, parole, or suspension of sentence, and a fine of not less than $250,000 nor more than $600,000. He was convicted of the responsive verdict of attempted possession of 400 or more grams of cocaine. Shaw, along with Odle, was initially sentenced, before a pre-sentence investigation was completed, to serve a maximum sentence of thirty years at hard labor with the first fifteen years to be served without benefit of probation, parole, or suspension of sentence and to pay a fine of $300,000, so that the State, rather than the Parish, would begin paying for the cost of incarceration. The trial court then granted Shaw's motion to reconsider sentence.
At the hearing on his motion to reconsider sentence, Shaw argued that, although the completed offense of possession of cocaine of 400 grams or more carries a minimum penalty, an attempt does not, and that neither La.R.S. 14:27 nor La.R.S. 40:979 provides for a mandatory minimum penalty. Because Shaw was not charged with attempt, the record does not indicate whether the conviction for attempt was based on La.R.S. 14:27 or La.R.S. 40:979. We must, therefore, determine whether La.R.S. 14:27 or La.R.S. 40:979 applies.
La.R.S. 14:27(D)(3) (emphasis added) states:
D. Whoever attempts to commit any crime shall be punished as follows:
(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.
La.R.S. 40:979(A) (emphasis added), in effect at the time of the commission of the offense, stated:
Except as otherwise provided herein, any person who attempts or conspires to commit any offense denounced and or made unlawful by the provisions of this Part shall, upon conviction, be fined or imprisoned in the same manner as for the offense planned or attempted, but such fine or imprisonment shall not exceed *504 one-half of the punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.[6]
In State v. Harmon, 594 So.2d 1054 (La.App. 3 Cir.), writ denied, 609 So.2d 222 (La.1992), writ denied, 623 So.2d 1326 (La.1993), where the record did not indicate whether the defendant's convictions were based on La.R.S. 14:27 or La.R.S. 40:979, this court found that a distinction between the two sentencing articles was of no moment because the statutory sentencing scheme was the same for both statutes.
The first circuit has taken a different approach and has drawn a distinction between the language of La.R.S. 14:27 and La.R.S. 40:979 in State v. Thomas, 95-2348, p. 5-6 (La.App. 1 Cir. 12/20/96), 686 So.2d 145, 148, writ denied, 97-0192 (La.3/14/97), 690 So.2d 36, holding:
The attempt to possess with intent to distribute cocaine in a drug free zone is punishable under either La.R.S. 40:979(A) or 14:27(D), and the state may choose either provision as the basis for the prosecution. See State v. O'Blanc, 346 So.2d 686, 690 (La.1977). In State v. Callahan, 95-1331 (La.3/29/96), 671 So.2d 903 (per curiam), the Supreme Court said there is no minimum sentence for the crime of attempted possession with intent to distribute marijuana. However, in doing so, the court applied the penalty provision of 14:27 rather than 40:979. Different language concerning the penalty for an attempt is contained in La.R.S. 14:27(D)(3): "fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both." Although the language of La. R.S. 14:27 supports the court's decision in Callahan, in the instant case the state relied on 40:979 and the language of 40:979 ("shall not exceed one-half of the punishment prescribed for the offense") supports a different interpretation.
At the time of the instant offense, the penalty for a first conviction for the completed crime of possession with intent to distribute cocaine in a drug free zone was a mandatory fine of $15,000 and imprisonment of not less than 15 years and not more than 30 years, with 15 years of the sentence to be without benefit of parole, probation, or suspension of sentence. La.R.S. 40:967(B)(1) & 40:981.3(E)(1). Following our decision in Chatman, and applying the penalty provided for in La.R.S. 40:979, the penalty for defendant's conviction for attempted possession with intent to distribute cocaine in a drug free zone is a fine of not more than $7,500 and imprisonment for not less than seven and one-half years and not more than fifteen years, with seven and one-half years to be served without benefit of parole, probation, or suspension of sentence. Thus, the second sentence imposed by the trial court was not illegal; and the court erred when it granted the motion to correct illegal sentence and resentenced defendant without restricting parole eligibility.
To determine whether courts apply La. R.S. 14:27 or La.R.S. 40:979 when completed drug offenses are charged, but a responsive verdict of attempt was returned, we surveyed a number of cases. Without *505 discussing their reasoning, the following courts have applied La.R.S. 40:979 in determining the sentencing range for the attempted offenses: State v. Johnson, 00-0056 (La.App. 4 Cir. 11/29/00), 780 So.2d 403, writ denied, 00-3547 (La.11/9/01), 801 So.2d 358; State v. Dunbar, 00-1896 (La. App. 4 Cir. 8/8/01), 798 So.2d 178; State v. Haley, 97-1385 (La.App. 3 Cir. 3/6/98), 709 So.2d 992; State v. Chatman, 599 So.2d 335 (La.App. 1 Cir.1992); State v. Williams, 588 So.2d 1239 (La.App. 1 Cir. 1991), writ denied, 592 So.2d 1333 (La. 1992); and State v. Laprime, 521 So.2d 538 (La.App. 4 Cir.), writ denied, 524 So.2d 517 (La.1988).
However, in other cases, the courts have applied La.R.S. 14:27: State v. Brown, 00-2120 (La.App. 4 Cir. 12/19/01), 804 So.2d 863; State v. Rodriguez, 00-0519 (La.App. 4 Cir. 2/14/01), 781 So.2d 640; State v. Monette, 99-1870 (La.App. 4 Cir. 3/22/00), 758 So.2d 362; State v. Smith, 97-2221 (La.App. 4 Cir. 4/7/99), 734 So.2d 826, writ denied, 99-1128 (La.10/1/99), 747 So.2d 1138; State v. Williams, 605 So.2d 686 (La.App. 2 Cir.1992), writ denied, 612 So.2d 66 (La.1993); and State v. Crooks, 580 So.2d 563 (La.App. 3 Cir.), writ denied, 584 So.2d 1170 (La.1991).
If we apply La.R.S. 40:979, we note that courts routinely find that there is a mandatory minimum sentence. See Haley, 709 So.2d 992; Chatman, 599 So.2d 335; Williams, 588 So.2d 1239; and Laprime, 521 So.2d 538. In Johnson, 780 So.2d at 411, the fourth circuit stated, "the combination of LSA-R.S. 40:979 and LSA-R.S. 40:967 would require that a portion of the attempt sentence be served without benefits." See also State v. Caldwell, 32,377 (La.App. 2 Cir. 9/22/99), 742 So.2d 91 and Dunbar, 798 So.2d 178. In accordance with the first circuit's finding in Thomas, 686 So.2d at 147, if La.R.S. 40:979 applies, Shaw's sentence should have been imposed without benefit of parole. Thus, the sentences imposed would be illegally lenient.
On the other hand, if La.R.S. 14:27 applies to this case, the sentence may or may not be illegally lenient. In State v. Middlebrook, 409 So.2d 588 (La.1982), the defendant was sentenced for attempted forcible rape to seventeen and one-half years, with the first year to be served without benefits. The penalty range for forcible rape was two to forty years, at least two of which were to be without benefits. The supreme court, quoting La.R.S. 14:27(D)(3) found that the defendant's sentence was not excessive and stated:
As to the argument relating to the sentence for attempted forcible rape we have ruled in State v. Patterson, [259 La. 508,] 250 So.2d 721 (La.1971) and in State v. Glantz, [254 La. 306,] 223 So.2d 813 (La.1969) that the phrase "in the same manner" in the attempted crimes statute means exactly what it says, i.e., that the other aspects of the imprisonment shall be "in the same manner" as provided for in the crime statute itself. Thus, in this case, the judge could properly impose a sentence ordering the first year of the sentence to be served without benefit of probation, parole, or suspension of sentence.
Id. at 592-93. In State v. Holley, 01-0254, p. 12 (La.App. 3 Cir. 10/3/01), 799 So.2d 578, 586, a forcible rape case, we approved of the trial court's sentence where it "ordered only the statutory minimum term of the sentence, one year, to be served without benefit of probation, parole, or suspension of sentence." We also note the case of State v. O'Blanc, 346 So.2d 686, 690 (La.1977), in which the supreme court, in discussing the conspiracy provision of La. R.S. 40:979 and La.R.S. 14:26 (Criminal Conspiracy), wrote that "both statutes specify the same penalty for the crime of conspiracy to distribute controlled dangerous *506 substances, that is, one-half of the punishment prescribed for the offense contemplated by the conspirators." However, La.R.S. 40:979 stated at that time that the imprisonment shall not exceed one-half of the punishment prescribed for the offense, while La.R.S. 14:26 stated that the imprisonment shall not exceed one-half of the longest term of imprisonment prescribed for the offense.
By contrast, in State v. Callahan, 95-1331 (La.3/29/96), 671 So.2d 903, the defendant was convicted of possession with intent to distribute marijuana, which carried a sentence of five to thirty years. The defendant was sentenced to two and one-half years for attempt, which the trial court noted was the minimum term. The supreme court, noting there is no express statutory minimum sentence, vacated the sentence and remanded for resentencing. Further, in Brown, 804 So.2d 863, the defendant, who was convicted of attempted possession of more than 28 grams of cocaine but less than 200 grams of cocaine, was sentenced without the benefit of parole, probation, or suspension of sentence. Our colleagues in the fourth circuit found that there was no minimum sentence for possession of cocaine of more than twenty-eight but less than two hundred grams when La.R.S. 14:27 is applied, so they deleted the provision denying the defendant probation and parole.
Because the supreme court's last pronouncement on this issue is embodied in Callahan, we are bound to follow it even though we agree with the prior holding in Middlebrook and the dissent in Callahan.[7] Therefore, if the State had elected to file under La.R.S. 14:27, the trial court was correct in not requiring the sentences be served without the benefit of parole, probation, or suspension of sentence. But if the State had filed under La.R.S. 40:979, the trial court gave an illegally lenient sentence. Accordingly, since we cannot determine from the record if the State filed under La.R.S. 14:27 or La.R.S. 40:979, and under the state of the law as we perceive it at this time, we remand the matter to the trial court for a hearing and ruling on that issue.
Regardless, the maximum sentence Shaw could have received is thirty years at hard labor and a fine of $300,000. Whether or not a minimum sentence was required to be imposed, his twenty year sentence still falls within the statutory range. Shaw argues that the trial court should have considered the fact that in 2001 the legislature reduced the penalty for possession of 400 or more grams of cocaine to a minimum of fifteen years and a maximum of thirty years, with no minimum mandatory sentence. Since he was convicted of attempted possession of 400 or more grams of cocaine, Shaw argues that the maximum sentence he could receive under the new law would be fifteen years.[8] He *507 claims that the new act should not only be considered in sentencing, but should be applied since he was sentenced after the effective date of the new act.
In a recent supreme court case, State v. Sugasti, 01-3407 (La.6/21/02); 820 So.2d 518, the court addressed the very issue raised by Shaw, that is, "whether legislative changes reducing sentencing provisions for certain offenses should be applied to offenses committed prior to the effective date of the statute when the defendant is sentenced following the effective date of the changes." Id. (footnote omitted). The particular statute at issue in Sugasti was La.R.S. 40:966(C)(1). Although the penalty provision at issue in the present case is La.R.S. 40:967(F), the findings of Sugasti should apply since the new penalty provisions for both La.R.S. 40:966(C)(1) and La.R.S. 40:967(F) were enacted by 2000 La. Acts No. 403.
According to Sugasti, Act 403 became effective June 15, 2001, before Shaw was sentenced in this case. Unlike the trial court in the present case, the trial court in Sugasti applied the new penalty provision at the time of the defendant's sentencing, which occurred after the effective date of Act 403. Citing well-settled case law, the supreme court found that "[a]lthough the trial judge should consider the ameliorative changes in the law in imposing sentence, the trial judge should not derogate from the penalty provision in effect at the time of the commission of the offense." Id. at 521. The supreme court particularly noted the fact that the legislature "specifically provided that the provisions of Act 403 `shall only have prospective effect.'" Id., citing 2001 La. Acts No. 403, § 6. The supreme court found that, if the legislature intended the more lenient sentencing provisions to take effect immediately, "language signifying that intent could have easily been incorporated into the act." Id.
In Sugasti, the supreme court distinguished Act 403 from the provisions of 2001 La. Acts No. 1163, "which amended the sentencing provisions of LSA-R.S. 14:98(E) related to driving while intoxicated." Id. The supreme court wrote:
The new provisions in Act 1163 retained the sentencing ranges provided for third and fourth offense driving while intoxicated violations, but radically changed the way the offender may or must serve the sentence imposed by the court. [Footnote omitted]. The statute encompassing the penalty provisions specifically states `upon conviction' the defendant shall be punished to a specific term. Additionally, the act did not include the language specifying `prospective only' application. Act 1163 simply went into effect on August 15, 2001.
Id., citing State v. Mayeux, 01-3195 (La.6/21/02), 820 So.2d 526. We note that the amendment to the penalty provision of La.R.S. 40:967(F) does not contain the "upon conviction" language. In light of the supreme court's decision in Sugasti, while the trial court in the present case should have considered the reduced penalty provision for attempted possession of 400 or more grams of cocaine, the trial court did not err in applying the penalty provision in effect at the time of the commission of the offense. Although the trial court did not specifically state in its reasons for the sentence imposed that it considered the reduced penalty provision, it was well aware of the amended provisions and did not state for the record that it was refusing to consider the amendments.
As an additional ground in this assignment, Shaw claims the trial court stated an incorrect proposition when it *508 stated that Defendants' version of the facts had been heard by the jury and found to be implausible. Shaw alleges that neither he nor Odle testified, no witnesses were presented on their behalf, and neither he nor his wife were entitled to give their version of the facts during the sentencing hearing. During the sentencing hearing, the trial court refused to allow Shaw to present his version of the facts of the case. The trial court's decision was correct in light of the fact that the hearing was a sentencing hearing rather than a motion for new trial or motion for post verdict judgment of acquittal. Additionally, the trial court could have been referring to Defendants' opening and closing arguments at trial when he referred to Defendants' version of the facts.
Finally, Shaw argues that, although the trial court referred to La.Code Crim.P. art. 894.1 when imposing sentence, the sentence he received was excessive and not supported by the record. He claims that several mitigating factors did not receive sufficient weight when the sentence was determined. Shaw argues that the offense was not a crime of violence, and no evidence was presented as to the contraband's destination or its origin. These factors, however, were not argued to the trial court. Furthermore, we find that the sentence imposed was not excessive. Shaw received a sentence ten years below the maximum sentence. Finally, Defendants were in possession of over twenty-five pounds of 98% pure cocaine with a street value of over one million dollars. In State v. Temple, 572 So.2d 662 (La.App. 5 Cir.1990), the defendant received a sentence of fifteen years at hard labor and a fine of $125,000 for attempted possession of 400 or more grams of cocaine, with the entire term of imprisonment to be served without benefit of parole, probation, or suspension of sentence. Considering the facts and reasons given by the trial court in this case, we find that it did not abuse its discretion in imposing a sentence of twenty years at hard labor. This assignment of error lacks merit.

SUFFICIENCY OF EVIDENCE ODLE
Odle also claims the evidence was insufficient to find him guilty of the verdict rendered by the jury. As does Shaw, Odle does not dispute the existence of cocaine in the gas compartment of the vehicle in which he was traveling. Odle argues, however, that the evidence was insufficient to show that he had the requisite control over the cocaine. Odle makes a distinction in his argument between being aware that narcotics are present and exercising dominion and control over the narcotics. He claims the circumstances of the present case are similar to the factual circumstances present in State v. Bell, 566 So.2d 959 (La.1990). Since we have set forth the facts in detail in Shaw's sufficiency of evidence claim, we will not repeat them here.
In Bell, the supreme court reversed Bell's conviction for attempted possession of cocaine, finding that, although the jury could have reasonably concluded that Bell was aware that drugs were present, the evidence was insufficient to prove that he exercised dominion and control over the drugs. On the day in question, Bell was sitting with his co-defendant, Davis, in Davis' car, which was parked two doors away from Davis' residence. Davis sat in the driver's seat of his car, while Bell sat in the passenger seat, listening to loud music. When police officers approached the car to ask Davis and Bell to turn down the music, "one of the officers saw through the driver's side window a distinctively wrapped package containing a white powder among cassette tapes on a plastic console placed over the transmission hump of *509 the car." Id. After retrieving the package, the officers arrested both men for possession of cocaine. Although the supreme court found the jury could have reasonably found that Bell was aware of the cocaine, the court found the jury could not have reasonably found that Bell exercised control over the cocaine:
According to the testimony of the arresting officers, the state had no evidence that Bell exercised any control over Davis' car, that he had any other drugs in his possession on his person, that he appeared under the influence of narcotics, or that he had possession of any drug paraphernalia. It was Davis who lived in the neighborhood two doors away and who responded to the request of the police by turning down the radio. From Bell's mere presence in the car close to the sealed package on the console between the two men, a rational factfinder could not have concluded that, even assuming he was aware of the contents, Bell exercised control and dominion over the package, or that he willfully and knowingly shared with Davis the right to control it. The state's evidence was therefore insufficient to prove that Bell was in constructive possession of the cocaine, or that he had performed any act tending directly toward accomplishing that goal. R.S. 14:27; 40:967.
Id. at 960. The supreme court affirmed the conviction of Davis.
Odle claims the circumstances in the present case are similar to and even stronger than the circumstances in Bell. Odle argues that no evidence was presented that he exercised any control over Shaw's vehicle. Additionally, Odle claims there was no evidence that he possessed any drugs or drug paraphernalia, that he was under the influence of drugs, and that he could have reasonably known of the cocaine's existence. Unlike the facts in Bell (where the cocaine was seen in plain view), the cocaine in the present case was found in sealed containers in the gas tank. Odle does note that there was some testimony regarding a WD-40 smell and excessive amounts of air fresheners, but he claims that this evidence does not show that he knew of the cocaine in the gas tank. He further argues that, even if the jury found the excessive air fresheners and WD-40 smell were indicative of his knowledge that contraband was present, this evidence does not show that he exercised control over it. Odle also mentions the fact that he agreed to the search of his luggage.
Odle cites State v. Clay, 95-814 (La.App. 3 Cir. 3/6/96), 670 So.2d 704, a case in which we found the evidence was insufficient to establish constructive possession of cocaine. The following facts were recited in our opinion:
On March 6, 1993, undercover officers of the Lafayette Police Department were conducting an operation to interdict street-level drug activity on the 300 block of Thirteenth Street within the city. While conducting the operation, two of the officers, Officer Charmaine Breaux Domingue and Officer Nolvey Stelly, Jr., were flagged down by an individual named Dwight Sam. Officer Stelly told Sam that he wanted to purchase crack cocaine. Sam went across the street to a vehicle that was backed up and parked in a yard, leaned into the driver's window of the vehicle, and returned to the officers with a rock of crack cocaine. He then gave Officer Stelly the cocaine and received a marked twenty-dollar bill in exchange. Sam returned to the parked vehicle from which he had obtained the cocaine and again leaned into the driver's window. Officer Domingue advised a police take-down team of the transaction.

*510 Other officers arrived and arrested Sam. The officers then told the driver and other occupant of the vehicle from which Sam obtained the cocaine to exit the vehicle, but they refused. After the occupants repeatedly failed to comply with requests to exit the vehicle, one of the officers broke a rear window and the individuals were removed from the vehicle. The driver was identified as Albert George. The defendant was the other occupant and had been sitting in the front passenger seat. The officers seized a medicine bottle containing thirteen rocks of crack cocaine, which was sitting on the vehicle's console between George and the defendant.
Id. at 705-06. Finding the above facts were not sufficient to find that the defendant possessed control over the drugs found in the vehicle, we wrote the following:
In the instant case, as in Bell, the state presented no evidence that the defendant had any other drugs on his person, that he appeared under the influence of narcotics, or that he had possession of any drug paraphernalia. Additionally, Officer John Trahan, who observed the bottle containing the cocaine on the middle console, testified that the bottle was closed. We note that in State v. Johnson, 404 So.2d 239 (La.1981), cert. denied, 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982), the court held that active cooperation in an attempt at drug disposal is adequate evidence, in combination with proximity to a drug or association with the possessor, to establish a prima facie case of drug possession. However, we do not find that the defendant's refusal to exit the vehicle can be construed as active cooperation in an attempt at drug disposal. The state did not present any evidence that the defendant attempted to dispose of the drugs, and after the arrest of the defendant, the drugs were observed on top of the middle console of the vehicle. Additionally, apart from participating in locking the doors and rolling up the windows, the state offered no evidence to show that the defendant exercised any control over the vehicle.
While the jury could have reasonably found that the defendant was aware of the medicine bottle and its contents as well as the drug sale, a rational fact finder could not have concluded that the defendant exercised dominion and control over the crack cocaine. Thus, we reverse the defendant's conviction and sentence for possession of cocaine in violation of La.R.S. 40:967(C) and order that he be discharged from further custody on that charge.
Id. at 707-08.
We find that the facts of the present case are distinguishable from Bell and Clay. In neither Clay nor Bell was there any testimony, as there was in the present case, as to the defendants extensive involvement with the driver of the vehicle prior to the finding of the narcotics. Odle, by his own admission, had traveled with Shaw, his cousin, from New York to Houston. He stated that they had attended a family reunion and stayed with a friend of Shaw's for three days, but did not remember the friend's name nor where the residence was located. Deputy Mouton testified that Odle appeared to be nervous. He also testified that the smell of air freshener and gasoline could be smelled as he approached the car. Odle's belongings were in the cargo area of the car, wherein the gasoline rag, the wrench and an additional air freshener were found. Evidence indicated the gasoline tank had recently been tampered with and was rigged to always indicate the vehicle had a full tank *511 of gas. Odle also told Deputy Mouton that he shared in the driving of the vehicle from New York, and knew of no modifications that had been done to it in Houston. Considering this evidence, together with the large amount of cocaine seized, the jury could have reasonably found that Odle not only was aware of the presence of the cocaine, but also shared in the control over the cocaine. Accordingly, this assignment of error lacks merit.

EFFECTIVE ASSISTANCE OF COUNSELODLE
In this assignment of error, Odle claims, as did Shaw, that he was denied effective assistance of counsel based on their joint-representation by the same lawyer. The argument presented by Odle is virtually the same as that asserted by Shaw in his effective assistance of counsel argument. Therefore, we will not repeat it here. Unlike Shaw, however, Odle did not give the trial court notice of a conflict prior to trial. At the October 15, 1998 hearing, Odle was informed of the possibility of a conflict and of his right to separate counsel, but he chose to be represented by the original defense counsel, the same attorney representing Shaw. Shaw alone asserted his right to separate counsel on the eve of trial. Since Odle did not assert his right to separate counsel prior to trial, he "must show an actual conflict of interest adversely affected his attorney's performance in order to establish a claim of ineffective assistance of counsel in violation of the Sixth Amendment." State v. Lobato, 603 So.2d 739, 749 (La.1992), citing Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). As we discussed in Shaw's assignment of error, no showing has been made that an actual conflict of interest existed. Furthermore, Odle's allegation, that Counsel's failure to call witnesses supports his claim that an actual conflict existed, does not have merit.
Counsel's failure to call witnesses for either Defendant does not show that he was acting under an actual conflict of interest. Finally, Odle fails to show how the alleged conflict of interest adversely affected Counsel's performance. This assignment of error is without merit.

RESPONSIVE VERDICTSODLE
Odle's claims in this assignment of error are identical to the claims raised by Shaw in his assignment of error entitled Responsive VerdictsShaw. Accordingly we will not repeat our opinion at length here and for the same reasons discussed in that assignment of error, this assignment of error also lacks merit.

EXCESSIVE SENTENCEODLE
By this assignment, Odle claims his eighteen-year sentence is unconstitutionally excessive. Like Shaw, Odle was convicted of attempted possession of 400 or more grams of cocaine, which had at the time the offense was committed a penalty range of thirty to sixty years at hard labor, with the first thirty to be served without probation, parole, or suspension of sentence, and a fine of not less than $250,000 nor more than $600,000. As we discussed earlier in this opinion, because Odle, like Shaw, was not charged with attempt, the record does not indicate whether the conviction for attempt was based on La.R.S. 14:27 or La.R.S. 40:979. Accordingly, we shall also remand this case for a hearing to determine which attempt statute the State charged Defendants with and resentencing if necessary. Regardless of the trial court's determination, the maximum sentence Odle could have received is thirty years at hard labor and a fine of $300,000, leaving the question of a minimum sentence to the trial court for the time being. Whether or not a minimum sentence should be imposed, Odle's *512 eighteen-year sentence still falls within the statutory range.
Once again, Odle makes some of the same arguments that Shaw does. He argues that the amendment to the sentencing provisions of La.R.S. 40:967 should be applied prospectively; that the attempt statute does not require a minimum sentence; and that the verdict was actually attempted possession of cocaine rather than attempted possession of cocaine of over 400 grams. We have reviewed these issues earlier in this opinion and shall not reiterate them here. It is sufficient to say that, as with Shaw, Odle's assignments of error are without merit relating to these issues.
Additionally, Odle asked for the trial court to exercise leniency in sentencing him because the facts indicated his involvement in the offense was "relatively insubstantial." He claims that he had no criminal record, not even a traffic citation, had raised good children, had been a good godfather, neighbor, friend, and member of his church. He argues that he was only a passenger in the vehicle, that he had the support of his family and community, and that he was a productive working member of his community. Odle suggests that, although the trial court verbally referred to La.Code Crim.P. art. 894.1 when imposing sentence, the trial court did not give several mitigating factors sufficient weight. Additionally, Odle argues that the offense was not a crime of violence, and no evidence was presented as to the contraband's destination or its origin. However, after our review of the record, we conclude that the sentence imposed was not excessive particularly when the amount of the cocaine seized is considered.
For the foregoing reasons, we find that this assignment of error also lacks merit.

CONCLUSION
Defendants' convictions are affirmed. However, we remand this case to the trial court to determine which sentencing provisions the State used for the attempted possession of cocaine of over 400 grams and resentencing if necessary.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.
COOKS, J., dissents with written reasons.
COOKS, J., Dissenting.
I believe an obvious conflict existed and its potential impact on the defense of Odle cannot be denied or overlooked regardless of when or by whom it was first brought to the Court's attention. The Court, once alerted, had a constitutional duty it could not discharge by merely informing the defendants, still jointly represented, that a potential conflict existed and then explaining that it might consider in the future that a waiver occurred. The appropriate inquiry was whether each defendant, knowingly and intelligently, intended in fact to waive his protected right to conflict free representation. The majority finds that Odle's failure to assert his right to separate counsel prior to trial compels that he now show an "actual conflict of interest adversely affected his attorney's performance." Odle's entire defense rested on a claim that he did not exercise dominion or control over the cocaine. The only other person in the car was codefendant Shaw. It is hard for me to envision that a conflict free competent counsel would "strategically" decide not to point the finger at such an obvious target in his defense.
NOTES
[1] We note that La.R.S. 40:979 may also apply in this case, but La.R.S. 40:979 does not define attempt. Thus, the definition of attempt, as set forth in La.R.S. 14:27(A), is the only definition of that crime and shall apply in this case.
[2] Because of another issue in Cortez, we assumed, "for the moment," that attempted cruelty to a juvenile was "legislatively designated responsive pursuant to La.R.S. 14:27." Id. at 519.
[3] This reference to Brown is obviously an error. There is no other to a case entitled Brown cited in the opinion. However, in the preceding paragraph State v. Brooks, 452 So.2d 149 (La.1984) is cited.
[4] In his brief, Shaw claims that the conflict issue was raised at and before trial. Shaw does not refer to, nor have we found, any portion of the trial transcript where the conflict issue was discussed.
[5] According to Shepard's, this case was overruled by State v. Dewey, 408 So.2d 1255 (La. 1982). However, our review of Dewey does not show it overruled Williams.
[6] This provision was amended effective June 15, 2001 and now tracks the language of La.R.S. 14:27, stating, the "... imprisoned in the same manner as for the offense planned or attempted, but such ... imprisonment shall not exceed one-half of the longest term of imprisonment prescribed for the offense."
[7] Justice Marcus dissented as follows:

La.R.S. 14:27 D(3) provides that "[i]n all cases he shall be imprisoned in the same manner as for the offense attempted." [Emphasis added.] In my opinion, "in the same manner" refers to the minimum sentence requirement for the offense attempted. The second sentence provides that imprisonment shall not exceed one-half of the longest term of imprisonment for the offense attempted. This refers to the maximum sentence for the offense attempted. Accordingly, I respectfully dissent.
Id. at 904.
[8] Act 403 of the 2001 Legislative Session amended the penalty provision for possession of 400 or more grams of cocaine. As amended, the penalty provision provides for a minimum sentence of fifteen years and a maximum sentence of thirty years and a fine of $250,000 to $600,000. Under the amended provision, Shaw argues, the maximum sentence he could have received for attempted possession of 400 or more grams of cocaine was fifteen years imprisonment, five years less than the sentence he received.